**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Andre C. KITTRELL, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 12, 2011.

Filed March 24, 2011.

Reargument Denied May 25, 2011.

Carolyn A. Castagna, Philadelphia, for appellant.

Jay W. Hannon, Assistant District Attorney, Media, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., FREEDBERG, and PLATT *, JJ.

* Retired Senior Judge assigned to the Superior Court.

OPINION BY FREEDBERG, J.:

Andre C. Kittrell appeals from the judgment of sentence entered on December 18, 2009 in the Court of Common Pleas of Delaware County. We affirm.

The relevant facts underlying this case are taken from the trial court's May 17, 2010 opinion.

In early December 2008, Sergeant Rutherford [of the Lansdowne Borough Police Department] while in an undercover capacity was introduced to a black male known as "Dee" and given his cell phone number, 267–242–7366. He contacted "Dee" by cell phone on December 9, 2008, to arrange a meeting to purchase forty ($40.00) dollars worth of crack cocaine, four (4) dime bags. Sergeant Rutherford arranged with "Dee" to meet him at the Summit Inn on Township Line Road in Upper Darby. He called "Dee" around 6:00 p.m. Shortly after this telephone conversation, Sergeant Rutherford arrived at the Summit Inn in an undercover vehicle accompanied in a separate undercover vehicle by Officer Bernhardt and Officer McGoldrick of the Upper Darby Police Department, who were there to conduct surveillance during the transaction.

At approximately 6:40 p.m. that evening (December 9, 2008), a dark blue or black Chevrolet Lumina bearing Pennsylvania Temporary license plate number HCV–9349 pulled into the parking lot behind the Sergeant's vehicle. It was later determined that the registered owner of that license plate was Defendant, Andre Kittrell. Sergeant Rutherford got out of his vehicle and into the rear passenger seat of the Lumina as "Dee" (Defendant Kittrell) was driving the vehicle and a black female was seated in the

front passenger seat. While in the rear passenger seat, he gave "Dee," the driver, forty ($40.00) dollars and in return "Dee" gave him four (4) blue baggies. Sergeant Rutherford then asked "Dee" if he was going to hook him up to try to get more cocaine; "Dee" gave him a fifth blue baggie. Sergeant Rutherford then got out of the vehicle and returned to his vehicle. The vehicle driven by "Dee" then left the area. Sergeant Rutherford drove back to the Lansdowne Police Department. It was later determined by laboratory analysis that these five (5) bags each contained crack cocaine.

Sergeant Rutherford again contacted "Dee" by cell phone at the same number previously used on December 15, 2008, and requested to buy forty ($40.00) dollars worth of crack cocaine. In speaking to "Dee" (Defendant Kittrell), the Sergeant arranged to meet him around 6:30 p.m., again at the Summit Inn. Sergeant Rutherford arrived at the Summit Inn and parked in the same area of the lot, the Upper Darby side. Sergeant Rutherford had to wait approximately twenty (20) minutes for "Dee" to arrive. "Dee" was driving the same dark blue or black Chevrolet Lumina, with the same temporary license plate as he was driving on the immediate past date (December 9, 2008). Sergeant Rutherford again got out of his vehicle and got into the rear passenger seat of "Dee's" vehicle. When he got into the vehicle, "Dee" drove around to the front of the building. Sergeant Rutherford handed "Dee" forty ($40.00) dollars in exchange for four (4) small yellow baggies that contained a white substance. "Dee" asked him if he was going to call him again in the future, to which the Sergeant replied "yes." Sergeant Rutherford then exited the Defendant's vehicle, and "Dee" immediately left. Sergeant Rutherford then returned to the Lansdowne Police Department with the drugs.

On December 18, 2008, Sergeant Rutherford again contacted "Dee" through the same cell phone number. He said to "Dee;" "Dee," it's Ken, I got 100 and he said, all right ... I gotcha." The Sergeant arranged to meet "Dee" once more at the Summit Inn at approximately 6:30 p.m. As discussed, Sergeant Rutherford waited to receive a call back from "Dee." "Dee" did call him back about a quarter to 7:00 p.m. and said, "we're here now." Sergeant Rutherford arrived at the Summit Inn, but "Dee" was not there. He parked his vehicle and waited.

Also, arriving with Sergeant Rutherford to assist were Sergeant Boudwin and Detective Honicker from the Delaware County Criminal Investigation Division, Officer Bernhardt, and Officer McGoldrick from the Upper Darby Police Department, and Sergeant Donegan from the Lansdowne Police Department as on that evening, December 18, 2008, it was decided the ongoing investigation would culminate in a "buy—bust." Officer Bernhardt was designated the "take down" officer on this occasion with responsibility to arrest the suspect.

"Dee" arrived a short time later driving a bluish-gray Chrysler 300 with two (2) passengers. When Sergeant Rutherford got out of his vehicle, he saw that it was "Dee" driving the vehicle. He then gave the preset signal so the arresting officer knew that this was the subject he planned to encounter, "Dee." The entire property of the Summit Inn was surrounded by law enforcement, and it was well lit. Officer Bernhardt and the assisting officers converged from different directions and blocked in the vehicle, and arrested "Dee" as well as the

vehicle's passengers, Patrick Becker and Moammar McNeal. As he and the other officers approached the vehicle yelling "Police, Police," Officer Bernhardt saw the driver, "Dee," pass something (drugs) to the front seat passenger which the passenger immediately threw out of the vehicle window onto the ground beside the vehicle, two (2) bags of suspected cocaine. Officer Bernhardt also recovered suspected contraband from "Dee" (Defendant), a large sandwich bag containing smaller, yellow ziplock baggies with a hard, white substance and a clear sandwich bag containing numerous small, clear ziplock baggies with a white chunky substance, cell phones and cash. "Dee" and the two other passengers were then taken to Upper Darby Police Department for processing.

Trial Court Opinion 5/17/10 at 25–29 (internal citations and footnotes omitted).

Appellant was charged with three counts of possession of a controlled substance,[1] three counts of possession with intent to deliver ("PWID")[2] and criminal conspiracy.[3] Appellant waived a preliminary hearing and was bound over for trial on January 29, 2009. Appellant was scheduled to appear for a formal arraignment on February 26, 2009, but did not and a bench warrant was issued. It was later discovered that Appellant was incarcerated in Philadelphia on an unrelated matter on that date.

A pretrial conference took place on April 14, 2009. At that time, the Commonwealth made an oral motion to withdraw the original criminal information and to refile criminal informations consistent with the criminal complaint. The motion was granted. The first information charged Appellant with three counts of PWID; the second with three counts of possession; and the third with two counts of conspiracy.

A nonjury trial took place on July 20, 2009. By verdict dated July 27, 2009, the trial court found Appellant guilty of all charges. Sentencing was scheduled for September 15, 2009. On August 14, 2009, the Commonwealth filed a notice of intent to seek the mandatory minimum sentence pursuant to either 18 Pa.C.S.A § 6317 (Drug–Free School Zones) and/or 18 Pa. C.S.A. § 7508(a)(3)(ii) (Drug Trafficking Sentences and Penalties).

On September 15, 2009, Appellant sought a continuance of his sentencing and also requested that he no longer be represented by trial counsel. The trial court granted the continuance but refused to allow Appellant to completely discharge trial counsel, directing that counsel appear at sentencing to advise Appellant.

On November 20, 2009, Appellant made an oral, *pro se* motion to dismiss the charges, claiming the trial court lacked jurisdiction. The motion was denied. Appellant then requested to proceed *pro se*. Based upon its observations of Appellant, the trial court directed that Appellant undergo a competency evaluation. Appellant underwent the evaluation and was found competent.

On December 18, 2009, Appellant made an oral, *pro se* motion to again continue sentencing, which was denied. Appellant also made an oral, *pro se* motion for a mistrial, which was likewise denied. The trial court also denied a written, *pro se* motion filed by Appellant, again seeking dismissal of the charges based upon lack of jurisdiction. Appellant then requested that stand-by counsel resume his direct

---

1.  35 P.S. § 780–113(a)(16).

2.  35 P.S. § 780–113(a)(30).

3.  18 Pa.C.S.A. § 903.

representation of Appellant. Counsel requested an evidentiary hearing on a newly asserted claim of "sentencing entrapment." After hearing counsel's offer of proof, in which counsel admitted that his claim was wholly based on circumstantial evidence, namely that the police did not arrest Appellant until the third transaction, the motion was denied. Appellant was sentenced to an aggregate term of five (5) to ten (10) years of incarceration, the mandatory minimum sentence having been imposed on the third count of PWID.

Appellant filed the instant, timely appeal. Appellant was ordered to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant requested and was granted an extension of time to file the statement. Appellant filed a timely statement, and the trial court issued an opinion.

On appeal, Appellant raises the following issues for our review:

1. Whether the trial court gave Appellant an illegal sentence as a matter of law by sentencing him to a 5–10 year mandatory minimum under a legal theory articulated in *Commonwealth v. Vasquez*, that this Court implicitly overruled in later case law?

2. Whether the trial court abused its discretion in refusing to mitigate Appellant's 5–10 years mandatory minimum based on the theory of sentencing entrapment?

Appellant's Brief at 4.

Appellant's first claim, challenging the legality of his sentence, was raised initially in his 1925 statement. While ordinarily an issue raised for the first time in a 1925 statement is waived, a challenge to the legality of sentence claim is not waivable. *Commonwealth v. Rush*, 959 A.2d 945, 950 (Pa.Super.2008), *appeal denied* 601 Pa. 696, 972 A.2d 521 (2009). Thus, we will review the claim.

■ Appellant was sentenced to the mandatory minimum sentence for prior drug trafficking convictions pursuant to 18 Pa.C.S.A. § 7508(a)(3)(ii),[4] and the Pennsylvania Supreme Court's decision in *Commonwealth v. Vasquez*, 562 Pa. 120, 753 A.2d 807 (2000).

In *Vasquez*, the defendant was charged in a single criminal information with various counts related to delivery of cocaine on several occasions. Although the defendant did not have prior drug trafficking convictions, the Commonwealth sought the mandatory sentence pursuant to 18 Pa.C.S.A. § 7508 which applies "if at the time of

4. **§ 7508. Drug trafficking sentencing and penalties (a) General rule.**—Notwithstanding any other provisions of this or any other act to the contrary, the following provisions shall apply:
(3) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance is coca leaves or is any salt, compound, derivative or preparation of coca leaves or is any salt, compound, derivative or preparation which is chemically equivalent or identical with any of these substances or is any mixture containing any of these substances except decocainized coca leaves or extracts of coca leaves which (extracts) do not contain cocaine or ecgonine shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection: (ii) when the aggregate weight of the compound or mixture containing the substance involved is at least ten grams and less than 100 grams; three years in prison and a fine of $15,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: five years in prison and $30,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity . . .

sentencing the defendant has been convicted of another drug trafficking offense." 18 Pa.C.S.A. § 7508(a). Appellant received the mandatory minimum sentence on the second count to which he pleaded guilty, with the first count serving as the predicate offense. On appeal, the Supreme Court held that a conviction in a multiple count complaint can be counted as a prior conviction triggering the enhancement provision of 18 Pa.C.S.A. § 7508. *Vasquez*, 753 A.2d 807 at 809. *See also, Commonwealth v. Williams,* 539 Pa. 249, 652 A.2d 283 (1994) (rejecting the argument that the mandatory minimum sentence pursuant to 18 Pa.C.S.A. § 7508(a)(3)(i) applies only if the defendant has a prior drug trafficking conviction at the time he committed the offense); *Rush,* 959 A.2d at 950 (Section 7508 requires enhanced sentences if, at the time of sentencing, the defendant has already been convicted of a prior drug trafficking offense. "A person who pleads guilty to multiple drug trafficking counts in a consolidated proceeding acquires multiple convictions. When that person then proceeds to sentencing, the enhanced penalty language applies ..."); *Commonwealth v. Boyd,* 941 A.2d 1, 7 (Pa.Super.2007) (18 Pa.C.S.A. § 7508(a)(3)(i) is an unambiguous statute; it cannot be rewritten to include a recidivist philosophy).

Appellant acknowledges the applicability of *Vasquez* and its progeny but argues that *Vasquez* has been "implicitly overruled" by the Pennsylvania Supreme Court's decisions in *Commonwealth v. Jarowecki,* 604 Pa. 242, 985 A.2d 955 (2009) and *Commonwealth v. Haag,* 603 Pa. 46, 981 A.2d 902 (2009). We disagree.

In *Jarowecki,* the Pennsylvania Supreme Court considered the grading of the defendant's eight simultaneous convictions for possession of child pornography under 18 Pa.C.S.A. § 6312(d)(2).[5] The Supreme Court discussed whether the grading of the child pornography convictions at counts two through eight in a multiple count complaint could be enhanced as a result of the conviction on count 1. The Supreme Court stated that *Vasquez* addressed "statutory language insufficiently analogous to Section 6312 to provide much guidance ... and addressed more nuanced and more complex statutory language than that presented in the instant case in Section 6312(d). As a result, we conclude [it] provide[s] limited guidance in interpreting the stark language in Section 6312(d)." *Jarowecki,* 985 A.2d at 955. The Supreme Court held that unlike Section 7508(a), Section 6312(d) used terms "second offense" and "subsequent offense" which indicate a recidivist philosophy. *Id.* at 964. The Supreme Court defined a recidivist sentencing philosophy as one designed to "punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline[,]" or stated alternately "the purpose of such laws is to enhance punishment when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to law." *Id.* at 961 (internal citations and quotation marks omitted). Thus, the Supreme Court concluded that Section 6312(d) does not authorize a sentence enhancement based on simultaneous convictions in a multi-count indictment. *Id.* at 968–69.

5. § 6312. Sexual abuse of children
(d) Child pornography.—
(2) A first offense under this subsection is a felony of the third degree, and a second or subsequent offense under this subsection is a felony of the second degree.

In *Haag*, the Pennsylvania Supreme Court discussed whether two offenses for driving under the influence ("DUI") occurring within a two hour period are considered first and second offenses under 75 Pa.C.S.A. § 3806,[6] for purposes of imposing a greater mandatory minimum sentence on the "second offense."[7] The Supreme Court held that § 3806 is a recidivist statute so that there to be a "prior offense" under § 3806, there must be a conviction occurring before the present violation. *Haag*, 981 A.2d at 906. The decision in *Haag* was grounded upon specific language in the Motor Vehicle Code concerning the application of recidivist sentencing provisions; when asked to apply those provisions the sentencing court must ascertain whether the conviction on the first violation predated the second offense. *Id.* at 902.

There is nothing in *Jarowecki* or *Haag* which "implicitly" overrules *Vasquez*. The Supreme Court in *Jarowecki* explicitly distinguished *Vasquez*, based on the differences in statutory language between § 7508 and § 6312, and the recidivist nature of § 6312. *Haag* does not reference *Vasquez*, and its holding is wholly grounded in language specific to the Motor Vehicle Code. Thus, Appellant's argument that his sentence is illegal is without merit.

■■■ Appellant's second claim challenges the discretionary aspects of sentence. Preliminarily, we note that "[i]ssues challenging the discretionary aspects

of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Commonwealth v. McAfee*, 849 A.2d 270, 275 (Pa.Super.2004) (citation omitted), *appeal denied*, 580 Pa. 695, 860 A.2d 122 (2004) (table).

In the present case, Appellant made an oral motion challenging the sentence on the ground raised herein. As such, we find that Appellant's oral motion preserved the claim now raised on appeal. *See McAfee*, 849 A.2d at 275.

■■■ The right to appeal the discretionary aspects of a sentence is not absolute. *See Commonwealth v. Pollard*, 832 A.2d 517, 525 (Pa.Super.2003). When an appellant challenges the discretionary aspects of the sentence imposed, he must present a substantial question as to the appropriateness of the sentence. *See Commonwealth v. Anderson*, 830 A.2d 1013, 1017 (Pa.Super.2003). An appellant must, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), articulate "that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme." *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1263 (Pa.Super.2005) (*en banc*), *appeal denied*, 585 Pa. 687, 887 A.2d 1240 (2005) (table). Only after an appellant's Rule 2119(f)

---

**6.** Driving After Imbibing Alcohol or Utilizing Drugs

**§ 3806. Prior offenses**

**a) General rule.**—Except as set forth in subsection (b), the term "prior offense" as used in this chapter shall mean a conviction, adjudication of delinquency, juvenile consent decree, acceptance of Accelerated Rehabilitative Disposition or other form of preliminary disposition before the sentencing on the present violation . . .

**7.** Defendant Haag was convicted of violating 75 Pa.C.S.A. § 3802(b) (High Rate of Alcohol). If the violation is a first DUI offense the mandatory minimum sentence includes a term of incarceration of no less then 48 consecutive hours, 75 Pa.C.S.A. § 3804(b)(1)(i); if the violation is a second DUI offense, the mandatory minimum sentence includes a term of incarceration of no less than thirty days, 75 Pa.C.S.A. § 3804(b)(2)(i).

statement meets these prerequisites can we determine whether a substantial question exists. *Commonwealth v. Goggins,* 748 A.2d 721, 727 (Pa.Super.2000) (en banc), appeal denied, 563 Pa. 672, 759 A.2d 920 (2000). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.* (emphasis in original).

▇▇ Appellant has included a Pa. R.A.P. 2119(f) statement in his brief in which he argues that he was the victim of sentencing entrapment. This claim states a substantial question. Sentencing entrapment is a federal doctrine which has been adopted by this Court. *Commonwealth v. Petzold,* 701 A.2d 1363 (Pa.Super.1997). Sentencing entrapment occurs when "a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." *Id.* at 1365 (internal citation omitted). To succeed on a claim of sentencing entrapment, the defendant must show either "outrageous government conduct" or "extraordinary government misconduct." *Id.* at 1366. This consists of conduct "so grossly shocking and so outrageous that it violates the universal sense of justice." *Id.* (internal citation omitted). This standard puts a heavy burden on the defendant, as sentencing entrapment is not established "simply by showing that the idea originated with the government or that the conduct was encouraged by it . . . or that the crime was prolonged beyond the first criminal act . . . or exceeded in degree or kind what the defendant had done before." *Id.* at 1366–67 (internal citation omitted).

In *Petzold,* the defendant sold a quarter pound of marijuana to a confidential informant ("CI"), working with the police. Following the first transaction, the CI attempted, unsuccessfully, to make additional purchases from the CI. The defendant refused to make the sales because he was concerned that he was being investigated by the police. Eventually, the police decided to do a reverse sting operation, wherein the CI would provide marijuana to the defendant. When the CI initially contacted the defendant to see if he was interested in splitting ten pounds of marijuana, the defendant said he would "maybe take one." After further discussion, the CI and the defendant agreed to purchase the marijuana and split it.

This Court held that these facts were not sufficient to demonstrate sentencing entrapment because the government did not behave in an outrageous manner and the defendant was not coerced into purchasing more marijuana than he was inclined to buy. This Court stated:

> [w]hile the specific amount of illicit drugs was not Appellant's idea, his interest in obtaining the proffered amount is clear from the transcript. Appellant needed little urging from the CI before agreeing to take five pounds of the drug. His reference to another deal which had the potential to generate four thousand dollars toward this purchase, coupled with his insistence that he "could move five," contradict his argument that he was not predisposed to make such a large purchase. Further the ease and promptness with which he accepted the CI's offer belie his assertion that the government ensnared him in a deal which resulted in a stricter sentence than he deserved.

*Id.* at 1367.

In *Commonwealth v. Adams,* 760 A.2d 33 (Pa.Super.2000), a CI informed police that the defendant and a co-conspirator were selling cocaine. The CI contacted the co-conspirator and arranged to purchase twenty-three dime bags of cocaine.

The delivery was made by the defendant. The next day, the CI arranged with the defendant to purchase five bags of cocaine for $100.00, which the defendant delivered. Approximately one month later, the CI contacted the co-conspirator to purchase another $100.00 of cocaine, the defendant drove to the CI's residence and the co-conspirator entered the residence to deliver the cocaine. The defendant pleaded guilty and, at sentencing, argued sentencing entrapment. Although remanding for resentencing on other grounds, this Court held that Appellant had not proven sentencing entrapment, stating:

> [h]ere the record is devoid of outrageous behavior or extraordinary misconduct on the part of the police or the CI. The CI initiated three controlled buys targeting either [the defendant] or [the co-conspirator]. The ease and promptness with which [the defendant] facilitated the transactions contradicts his argument he was entrapped.

*Adams,* 760 A.2d at 40.

In *Commonwealth v. Paul,* 925 A.2d 825 (Pa.Super.2007), an undercover police officer purchased one "eight-ball" of methamphetamine from the defendant. The police officer made several subsequent attempts to purchase more methamphetamine from the defendant, but the defendant told him he was not interested in making any further deliveries. The police had several "contacts" encourage the defendant to make an additional sale. Some three weeks after the first sale, the defendant sold two "eight-balls" of methamphetamine to the police officer. At sentencing, the defendant claimed sentencing entrapment and the trial court agreed, refusing to impose the mandatory minimum sentence. This Court reversed stating:

> [i]n the absence of a great disparity between the 3.4 grams of methamphetamine distributed at the July 17, 2005

transaction and the 6.8 grams of methamphetamine distributed at the August 8, 2005 transaction, we are not convinced that Appellee had no predisposition to commit the greater offense. The reasons articulated by the trial court to support its findings of sentencing entrapment include that [the police officer] encouraged Appellee to sell him two "eight balls," and that the Commonwealth prolonged the arrest beyond the first criminal act in which Appellee distributed 3.4 grams of methamphetamine.... this is not enough to establish sentencing entrapment.

*Paul,* 925 A.2d at 831 (internal citations omitted).

There is no meaningful difference between the facts in the cases cited above which were not sufficient to constitute sentencing entrapment and those in the instant matter. Here, within minutes of being contacted, Appellant sold Sergeant Rutherford fours bags of crack cocaine and gave him a fifth bag of crack cocaine at a location chosen by Appellant. The bags had an aggregate weight of 0.36 of a gram. Approximately one week later, again, within minutes of being contacted, Appellant met Sergeant Rutherford and sold him four bags of crack cocaine, with an aggregate weight of 0.35 of a gram. Appellant asked Sergeant Rutherford if he would continue to buy from him. Three days later, Sergeant Rutherford contacted Appellant and asked to purchase ten dime bags of crack cocaine, which would have had an approximate weight of 0.70 of a gram. They met at the same location within an hour of the telephone call. Appellant, with no prompting from Sergeant Rutherford, brought nearly 20 grams of crack cocaine, an amount well in excess of what was requested, to the meeting. Appellant has not pointed to any specific example of

"outrageous" conduct by the government and has not provided any explanation of how the government was responsible for his being in possession of nearly twenty grams of crack cocaine at the time of his arrest. Thus, the trial court did not abuse its discretion in denying Appellant's request for an evidentiary hearing on his claim of sentencing entrapment.

Judgment of sentence **AFFIRMED.** Jurisdiction **RELINQUISHED.**