J-A24008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| RICHARD HARRIS | |
| Appellant | No. 3109 EDA 2015 |

Appeal from the Judgment of Sentence September 18, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012999-2008

BEFORE:  BOWES, OTT AND SOLANO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 18, 2017**

Richard Harris appeals from the aggregate judgment of sentence of twenty-three to forty-six months imprisonment imposed after he was found in violation of probation.  We affirm.

On June 27, 2008, Appellant attempted to take money from a cash register at a hotel in Philadelphia.  When confronted by the hotel manager, Appellant displayed a firearm and stated he would "come back any time I want."  The police were called and Appellant was arrested shortly thereafter.  Appellant was charged with, *inter alia*, robbery, possession of a weapon by a prohibited person, terroristic threats, and simple assault.  On May 27, 2009, Appellant proceeded to a non-jury trial and was found guilty of simple assault and terroristic threats.  He was acquitted at all other counts.

On August 6, 2009, Appellant was sentenced to eleven and one-half to twenty-three months of incarceration, plus three years probation, for the terroristic threats conviction. At simple assault, the court imposed a consecutive period of two years probation. Appellant was granted parole, and, on May 28, 2010, the probation office commenced supervision.

On May 28, 2011, Appellant was arrested in New Jersey for possession of drugs, which led to a March 23, 2012 conviction. Appellant was sentenced to a period of probation, which he violated, ultimately leading to revocation and three years incarceration in that state. Appellant's incarceration terminated August 11, 2015, and he was extradited to Philadelphia on August 28, 2015, for purposes of the instant violation of probation (hereinafter "VOP") proceedings.

The Commonwealth initiated VOP proceedings on September 1, 2015. A *Gagnon I* hearing[1] took place September 8, 2015, the transcript of which is not in the certified record. On September 18, 2015, a *Gagnon II* hearing was held, wherein the trial court incorporated, without objection, the *Gagnon II* report prepared by Philadelphia County Probation Officer

---

[1] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (defendant accused of violating probation is entitled to two hearings: 1) a pre-revocation hearing to determine probable cause of a violation; and 2) a revocation hearing to establish violation and determine whether revocation is warranted).

Kimberly Kalbach, who was not present at the hearing. The trial court's comments indicated that Officer Kalbach was present the previous day and provided information[2] to the parties.

> THE COURT: . . . . Ms. Kalvach [*sic*], who was the out-of-county probation officer [*sic*] under Interstate Contact, appeared yesterday and gave the [c]ourt a summary, but the summary did not include the most recent information which was provided by e-mail yesterday following appearing [*sic*], which I provided copies to both counsel which indicate that Ms. Kalvach [*sic*] spoke with Atlantic County Probation and all the matters are complete with them.

N.T., 9/18/15, at 5-6. The Assistant District Attorney conceded that Officer Kalbach was unaware of Appellant's incarceration until shortly before the hearing.[3]

Appellant objected to the timeliness of the VOP hearing, since the underlying conduct occurred May 28, 2011, and the conviction occurred on March 23, 2012. The trial court denied the objection by relying on Officer Kalbach's ***Gagnon II*** report, which reveals the following facts. Officer Kalbach unsuccessfully attempted to contact Appellant on June 2, 2010. On June 4, 2010, Officer Kalbach learned that Appellant was in a psychiatric hospital in New Jersey, and continued to track his progression through various facilities. She asked New Jersey authorities to supervise Appellant,

---

[2] It is not clear if this summary was of record.

[3] Apparently, the Philadelphia County District Attorney's Extradition Unit initiated the proceedings. N.T., 9/18/15, at 14.

but that request was refused since the facilities were not permanent addresses. On December 13, 2010, Appellant was accepted for placement in a boarding home, and New Jersey apparently accepted full case supervision as of February 3, 2011.[4] A note in the report states that Officer Kalbach was informed, on July 18, 2012, of Appellant's March 23, 2012 conviction. The report also contains other information received from New Jersey probation officials regarding Appellant's movements, but it does not indicate when that information was received.[5]

Based on this evidence, the trial court determined that Appellant violated probation as of May 28, 2011, revoked his probationary sentence, and imposed the aforementioned judgment of sentence. On October 8, 2015, Appellant filed an untimely post-sentence motion seeking reconsideration of sentence. This timely appeal followed. Appellant raises the following errors.

> I. [Appellant]'s probation violation hearing was untimely and violated Pa.R.Crim.P. 708(B)(1), when the court held this hearing over three years after the violation and long after Appellant's probation would have expired.

_____

[4] ***See*** 61 Pa.C.S. §§ 7111-7122 (Interstate Compact for the Supervision of Adult Offenders Act).

[5] Since Officer Kalbach, by the Commonwealth's own concession, was unaware of Appellant's incarceration until shortly before the VOP hearing, it is plausibly inferred that this information was obtained in the course of preparing the ***Gagnon II*** report.

II.     The lower court erred and abused its discretion when it sentenced Appellant, without accurate and sufficient information, to a manifestly excessive violation of probation sentence, twenty-three to forty-six months, and where the court failed to consider [Appellant]'s personal history and rehabilitative needs and improperly considered [Appellant]'s mental illness as an aggravating factor.

Appellant's brief at 4.

In an appeal from a sentence imposed after the court has revoked probation, we can review "the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed." *Commonwealth v. Wright*, 116 A.3d 133, 136 (Pa.Super. 2015).

Appellant's first claim challenges the timeliness of the proceeding. Rule of Criminal Procedure 708(B)(1) states that a probation revocation must be held as "speedily as possible," which we have interpreted to require a hearing within a reasonable amount of time. *Commonwealth v. Woods*, 965 A.2d 1225, 1227 (Pa.Super. 2009).  There is no presumptive time period in which the hearing must take place.  *Id*.  Timeliness of the proceeding implicates its validity and presents a question of law. *Commonwealth v. Infante*, 888 A.2d 783, 790 (Pa. 2005).  Therefore, our review is *de novo*.  *Id*.

If, as herein, there is a delay in the proceeding, the period of delay is calculated from the date of conviction or entry of guilty plea to the date of the violation hearing.  *Commonwealth v. Clark*, 847 A.2d 122, 124

(Pa.Super. 2004). In examining the reasonableness of the delay, we examine three factors: the length of the delay; the reasons for the delay; and the prejudice resulting to the defendant from the delay. ***Commonwealth v. Christmas***, 995 A.2d 1259, 1263 (Pa.Super. 2010). We look to the circumstances surrounding the delay to determine whether the Commonwealth acted with due diligence in scheduling the hearing. ***Id***. at 1263. The Commonwealth bears the burden of proof and must establish the violation by a preponderance of the evidence. ***Wright***, ***supra***. If the Commonwealth has failed to meet its burden in justifying the delay, we must determine whether that delay has prejudiced Appellant.

The trial court found that the Commonwealth was not at fault for any delay, since the information provided by New Jersey to Officer Kalbach was faulty. It observed:

> This [c]ourt did not err when it denied [Appellant]'s objection based upon the timeliness of the hearing. As this [c]ourt noted, Kalbach had received only sporadic and faulty information from New Jersey authorities and apparently was unaware that Defendant had been incarcerated until shortly before the instant hearing due to the faulty information that she had received from New Jersey. Moreover, [Appellant] did not maintain a consistent address while he was in New Jersey and had absconded from New Jersey supervision on July 17, 2012, which was the last information Kalbach had received from New Jersey authorities as to [Appellant]'s status and location. Thus, the delay in scheduling [Appellant]'s revocation hearing was not caused by a lack of due diligence on the part of the Commonwealth, but by faulty information received from New Jersey authorities which indicated incorrectly that [Appellant] had been on absconding status since July 2012. Once [Appellant]'s correct whereabouts were made known to the Commonwealth, the instant revocation hearing was promptly scheduled. Therefore, this [c]ourt did not

err when it denied [Appellant]'s objection based on the timeliness of the hearing as the delay was not caused through the fault of the Commonwealth.

Trial Court Opinion, 11/30/15, at 6.

The Commonwealth's response to Appellant's claim of unreasonable delay is to largely deny any delay. The Commonwealth maintains that the delay amounted to three weeks, arriving at that number by including only the time period between extradition and the actual hearing. "[T]he Commonwealth held [Appellant's] revocation hearing three **weeks** after he was extradited to Philadelphia following the completion of his three-year incarceration in New Jersey. Thus, his probation officer acted with due diligence[.]" Commonwealth's brief at 6 (emphasis in original).

The trial court, on the other hand, finds that New Jersey provided faulty information to the probation officer, and therefore appears to hold that the Commonwealth was simply not responsible for Appellant's whereabouts. Under this interpretation the delay is immaterial.[6] "[R]evocation hearings must be held with reasonable promptness **after a probation officer is chargeable with knowing that probation has been violated**." *Commonwealth v. Stancil*, 524 A.2d 505, 506-07 (Pa.Super. 1987) (emphasis added).

---

[6] Logically, due diligence is predicated on a duty to act. If the Commonwealth could rely on New Jersey's information without independent verification, as the trial court holds, then it was not required to schedule a hearing.

*Clark*, *supra* establishes that the period of delay is calculated from the date of conviction to the date of the violation hearing. Thus, the relevant period of delay is three years, five months, and twenty-six days (March 23, 2012, to September 18, 2015). The disjointed nature of the record, which is subject to multiple interpretations regarding what the Commonwealth knew and when, impedes effective appellate review. However, we need not resolve the question of whether the Commonwealth is at fault for the lengthy delay as we have determined, for the reasons that follow, that Appellant cannot establish prejudice.

"[W]here the Commonwealth provides no explanation for the delay, the court should not attribute the delay to the defendant; instead, the court should analyze whether the delay prejudiced the defendant." *Christmas*, *supra* at 1263. We find that Appellant has not been prejudiced. *Christmas* summarized what prejudice entails in the probation revocation hearing context as

> something which would detract from the probative value and reliability of the facts considered, vitiating the reliability of the outcome itself. One specific purpose of our rule in requiring a prompt revocation hearing is to avoid such prejudice by preventing the loss of essential witnesses or evidence, the absence of which would contribute adversely to the determination. Another is to prevent unnecessary restraint of personal liberty. **If a defendant is already incarcerated on the charges that triggered the probation revocation, he cannot claim the delay in holding his revocation hearing caused him any loss of personal liberty**. Likewise, where a conviction on new charges conclusively establishes the

defendant's probation violation, the defendant cannot claim a delay in his VOP hearing prejudiced him because he lost favorable witnesses and evidence.

*Christmas*, *supra* at 1263–64 (citations omitted, emphasis added).

The New Jersey conviction is conclusive proof of the probation violation, thus Appellant cannot claim he lost favorable evidence or witnesses. Furthermore, while the period of delay herein is technically almost three and one-half years, Appellant conceded at the hearing that he was incarcerated in New Jersey in 2012 for violating his New Jersey probation. "[T]here is reflected a resentence date of September 13, 2013 with that sentence being three years state prison with 297 days credit." N.T., 9/18/15, at 6.

This 2012 incarceration is significant to our analysis. Subtracting 297 days from the September 13, 2013 resentencing date yields November 20, 2012, after which time Appellant remained continuously incarcerated in New Jersey until he was extradited for the VOP proceeding. We repeat that Appellant's Pennsylvania probation commenced May 28, 2010. Note, then, that as of November 20, 2012, Appellant was in violation of his three-year period of probation for the terroristic threat sentence. Therefore, the **true** period of delay is the four-month period spanning July of 2012, which is the earliest date the Commonwealth learned of the violation, to November 20, 2012. We do not deem this delay prejudicial. Moreover, since Appellant was continuously incarcerated after that point, he cannot claim prejudice for

the entire time he was incarcerated in New Jersey. *Christmas*, *supra* at 1264.

In determining Appellant was not prejudiced, we note that, even if the Commonwealth had filed a probation detainer at some point during Appellant's incarceration, New Jersey was under no obligation to return Appellant to Pennsylvania, as both jurisdictions are parties to the Interstate Agreement Detainer Act ("IAD"). The IAD does not apply to outstanding probation violations.

> [T]he phrase "untried indictment, information or complaint" in Art. III refers to criminal charges pending against a prisoner. A probation-violation charge, which does not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution, thus does not come within the terms of Art. III. Although the probation-violation charge might be based on the commission of a criminal offense, it does not result in the probationer's being "prosecuted" or "brought to trial" for that offense. Indeed, in the context of the Agreement, the probation-violation charge generally will be based on the criminal offense for which the probationer already was tried and convicted and is serving his sentence in the sending State.

*Carchman v. Nash*, 473 U.S. 716, 725 (1985). This is precisely what happened herein, as the probation violation is based on the criminal offense for which Appellant was serving his sentence. While the purpose of the IAD is to give an incarcerated defendant in one state the right to demand a speedy disposition when a detainer is lodged in another state, the point remains that no further proceedings would have occurred until New Jersey

chose to release Appellant.[7]  Appellant fails to establish how he was prejudiced by the Commonwealth's failure to file a *pro forma* notice of revocation that would not be acted upon until New Jersey released him, and thus, he is not entitled to relief.

We next address Appellant's sentencing claims.  Our standard of review is well-settled.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill[-]will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hoch*, 936 A.2d 515, 517–18 (Pa.Super. 2007) (quoting

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super. 2006)).

Appellant's claims implicate the discretionary aspects of the sentence imposed.  Preliminarily, we note that these challenges are not automatically reviewable as of right.  *Commonwealth v. Disalvo*, 70 A.3d 900, 902 (Pa.Super. 2013).  Before we review such a claim on the merits, we

---

[7]  The Commonwealth refers to the Interstate Agreement Detainer Act in its brief, stating that federal law prohibits any state from seeking extradition for purposes of a probation revocation hearing.  However, the IAD grants a right to defendants; it does not impose a limitation on the States.  We need not discuss the nuances of whether and how the Commonwealth could have extradited Appellant from New Jersey to Pennsylvania pursuant to some other agreement, as it is sufficient to observe for purposes of prejudice that Appellant had no right to demand extradition.

> engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [*see* Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . .

*Id*. (citation omitted). We decide the substantive merit of the claims only if each requirement is satisfied. *Id*. This appeal was timely filed and includes a separate statement of reasons as required by Pa.R.A.P. 2119(f). We separately address the remaining two requirements.

We shall first discuss the substantial question prong. The presence of a substantial question is determined on a case-by-case basis and exists only when the appellant "advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Diehl*, 140 A.3d 34, 44–45 (Pa.Super. 2016) (internal citations and quotation marks omitted).

Appellant alleges two distinct substantial questions: that the sentence imposed was manifestly excessive, and that it did not account for the sentencing factors set forth in 42 Pa.C.S. § 9721(b). A claim of manifest excessiveness presents a substantial question. *Commonwealth v. Kelly*, 33 A.3d 638, 640 (Pa. Super. 2011).

The second allegation also presents a substantial question. However, we note that 42 Pa.C.S. § 9721, the statute cited by Appellant, governs

sentencing in general. A VOP resentencing, however, is fundamentally

different in character from an initial sentencing procedure.

> The sentencing court's institutional advantage is, perhaps, more pronounced in fashioning a sentence following the revocation of probation, which is qualitatively different than an initial sentencing proceeding. At initial sentencing, all of the rules and procedures designed to inform the court and to cabin its discretionary sentencing authority properly are involved and play a crucial role. However, it is a different matter when a defendant reappears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence. For example, in such a case, contrary to when an initial sentence is imposed, the Sentencing Guidelines do not apply, and the revocation court is not cabined by Section 9721(b)'s requirement that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."

*Commonwealth v. Pasture*, 107 A.3d 21, 27 (Pa. 2014). Last month, in

*Commonwealth v. Derry*, --- A.3d ---, 2016 WL 6776292 (Pa.Super. 2016),

we clarified the interplay between § 9721 and 42 Pa.C.S. § 9771, which

specifically governs sentencing following probation revocation.

> Section 9771(c) mandates a VOP court's consideration of additional factors at sentencing not addressed by Section 9721(b). Consequently, a VOP court is not *confined* to *only* consider the factors set forth in Section 9721(b), that is, it is not *cabined* by Section 9721(b). Instead, a VOP court must *also* consider the dictates of Section 9771(c), given the unique aspects of VOP sentences not applicable when a court issues the initial sentence. In addition to issuing a sentence that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant [,]" a VOP court must also consider, for example, whether the sentence imposed is "essential to vindicate the authority of the court[,]" and must give "due consideration ... to the time spent

- 13 -

serving the order of probation." 42 Pa.C.S. § 9771(c). Both of these concerns are unique to VOP sentencing hearings and may, in the end, weigh heavily on a court's consideration of an appropriate VOP sentence. But such additional considerations do not, as a necessary consequence, render the Section 9721(b) factors inapplicable for purposes of VOP sentences.

There should be little doubt about the intent of the *Pasture* Court. The Court never explicitly stated that a claim alleging a VOP court's failure to consider Section 9721(b) factors no longer presents a substantial question for the purposes of discretionary sentencing review. . . .

Accordingly . . . a VOP sentencing court must consider those factors, but must also consider factors set forth in Section 9771(c), which are unique to VOP sentences. Therefore, we find that Appellant presents a substantial question for our review, to the extent that he challenges the sentencing court's failure to consider Section 9721(b) factors.

*Id*. at 5-6 (footnote and citations omitted). Accordingly, we find that Appellant has presented a substantial question for our review to the extent he alleges a failure to consider the § 9721(b) factors in tandem with § 9771(c).

However, we conclude that Appellant has failed to satisfy the remaining prong of our discretionary appeal scheme as he failed to timely file a post-sentence motion. "Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Commonwealth v. Kittrell*, 19 A.3d 532, 538 (Pa.Super. 2011); Pa.R.Crim.P. 708(E) ("A motion to modify a sentence imposed after a

revocation shall be filed within 10 days of the date of imposition."). Herein, sentence was imposed September 18, 2015, and the post-sentence motion was filed October 8, 2015, well outside the ten-day window. "An untimely post-sentence motion does not preserve issues for appeal." *Commonwealth v. Wrecks*, 931 A.2d 717, 719 (Pa.Super. 2007). Accordingly, we may not grant the discretionary appeal.

Nevertheless, we have reviewed the substantive merits and would affirm judgment of sentence in any event. Appellant's excessive sentencing claim is unavailing, as he aggregates the three years of incarceration imposed in New Jersey with the instant sentence, claiming "he will essentially serve a total of five to seven years in custody as a result of this drug possession." This statement is incorrect. Appellant was sentenced to incarceration as applied to the **original** convictions of simple assault and terroristic threats, not as further punishment for the drug possession. Appellant is not being further punished for drug possession and his subsequent New Jersey probation violation. Instead, the court simply relied upon those criminal acts in reconsidering the original leniency the court bestowed.

Appellant's independent claim that the court improperly punished Appellant for having mental health issues fares no better. He draws our attention to § 9721(b)'s requirement that the court must consider the rehabilitative needs of the defendant, and claims that the trial court

- 15 -

improperly treated Appellant's schizophrenia as a basis for harsher punishment instead of viewing it as a factor in fashioning a sentence that accounts for Appellant's rehabilitative needs. This argument ignores the countervailing argument, advanced by the Commonwealth, that Appellant's mental illnesses were not properly treated while he was at liberty. The trial court accepted that argument, and referenced its belief that Appellant's mental health needs were best addressed by incarceration and treatment in correctional facilities. Indeed, Appellant admitted during the hearing that he self-medicated through illegal drugs and acted out when he was off medication. N.T., 9/18/15, at 21. The trial court clearly considered the § 9721(b) factors in fashioning its sentence, and, had the issue been preserved for our review, we would have declined to find an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/18/2017