J-S37028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH ROBERT ELSE | : | |
| | : | |
| Appellant | : | No. 914 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 1, 2022
In the Court of Common Pleas of Carbon County Criminal Division at
No(s):  CP-13-CR-0001075-2020

BEFORE:  BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED DECEMBER 08, 2022**

Keith Robert Else appeals from the judgment of sentence, imposed in the Court of Common Pleas of Carbon County, after he entered an open guilty plea to one count of third-degree murder.[1]  On appeal, Else challenges the discretionary aspects of his sentence.  We affirm.

On October 5, 2020, Pennsylvania State Troopers Nicolas De La Iglesia and Brian Stillman responded to a report that someone had sustained a gunshot wound at the home of Else and his wife, the victim, Laura Jean Else, in Palmerton, Carbon County.  NT. Guilty Plea, 12/23/21, at 4-5.  The victim was transported via helicopter to St. Luke's Hospital at Fountain Hill, where she later died.  *Id.* at 5, 7.  Else agreed to be transported to the state police barracks in Lehighton, where Trooper De La Iglesia read Else *Miranda*

---

[1] 18 Pa.C.S.A. § 2502(c).

warnings and Else agreed to speak to Trooper De La Iglesia. *Id.* at 5. Else told Trooper De La Iglesia that he and the victim had been married for seven or eight years. *Id.* The couple had two children of their own and Else was helping to raise the victim's child from a prior relationship. *Id.* Else related that the family had recently been undergoing financial hardship and were about to be displaced from their current residence. *Id.* As a result of these difficulties, Else stated that there had been an "increased amount of fighting and arguments between him and his wife." *Id.* at 5-6. Else stated that the two had engaged in a physical dispute in which they each had struck the other. *Id.* at 6.

At some point, Else retrieved a black handgun and its storage container from a desk in the living room, because he "wanted to have the victim sell the[] items due to their financial issues." *Id.* at 6. Else stated that, upon retrieving the gun, he observed that the magazine was not fully inserted. *Id.* He removed the magazine and threw it towards a laundry basket in the living room. *Id.* Else then "racked the slide to the rear, causing a cartridge to eject into his hand." *Id.* As he tried to hand the gun to the victim, it "accidentally discharged, striking the victim."[2] *Id.* Else dropped the gun into a toybox. *Id.* He insisted that he believed the gun was unloaded. *Id.*

---

[2] Although Trooper De La Iglesia stated in his recitation of the factual basis for the plea that the couple's children were upstairs at the time the gun was discharged, *id.* at 6-7, a victim impact letter from the couple's 8-year-old daughter stated that all three children witnessed their mother being shot. ***See***
*(Footnote Continued Next Page)*

Else was later re-interviewed by Trooper De La Iglesia and Corporal Alan Pietkiewicz and admitted that "he could not have rendered the firearm safe in the manner he initially described." *Id.* at 7. However, he continued to maintain his belief that the gun was unloaded. *Id.* Trooper De La Iglesia then advised Else that his wife had died and that he would interview him again after executing a search warrant at the scene of the shooting. *Id.* In searching the Else residence, troopers discovered a black semi-automatic pistol in the toy box near the stairway; there was no magazine inserted and it had no cartridge or casing in the chamber. *Id.* at 7. Troopers also discovered a projectile, a spent casing, and a cartridge on the floor in the middle of the room near the stairway. *Id.* Finally, troopers found an empty Taurus magazine in a laundry basket in the front room, buried under several layers of clothing, as well as another Taurus magazine containing several rounds in a kitchen drawer. *Id.* at 7-8. Trooper De La Iglesia indicated that

> [t]he location of the cartridge on the floor near the stairwell was not consistent with [Else] having removed the magazine and immediately ejecting the chambered cartridge as he had previously stated. The empty magazine was buried in the living room and, again, did not appear consistent with [] having landed on top of the laundry basket.

*Id.* at 8.

---

N.T. Sentencing, 3/1/22, at 13-14 ("I wanted to tell you that my dad lied about [us] being upstairs when the kill happened. I was downstairs. Evelyn and Robert were on the stairs in the middle.").

- 3 -

Following his return to the barracks, Trooper De La Iglesia re-interviewed Else regarding the inconsistencies uncovered at the scene. *Id.* After receiving his *Miranda* warnings again, Else gave a slightly revised version of his original story, but maintained his belief that the gun was unloaded. *Id.* at 8-10. Finally, after being confronted with the physical evidence, Else admitted that he had lied about his initial actions with the firearm. Else stated that he "had not removed the magazine as initially stated." *Id.* at 10. He indicated that the magazine was not fully seated when he had picked it up, and that he had struck the bottom of the firearm, fully seating the magazine, and then racked the firearm. *Id.* Else claimed that he had then "placed the firearm to his own head and verbally threatened to shoot himself." *Id.* Thereafter, Else stated that he removed the magazine, believing the firearm was unloaded, *id.*, and approached the victim, who was standing with her back to the wall; Else stated that he was between the victim and the toy chest. *Id.* at 10-11. Else related that his left hand was on the victim's right shoulder and the gun was in his left hand, along his right side, with his finger on the trigger. *Id.* at 11. When asked if he was attempting to menace his wife with the gun, Else claimed he was trying to hug her, though "he could not explain why he would have the gun pointed at the victim while trying to give the victim a hug." *Id.*

Else was charged with criminal homicide and recklessly endangering another person. On December 23, 2021, he entered a guilty plea to third-degree murder. The trial court ordered a pre-sentencing investigation ("PSI")

report and deferred sentencing until March 1, 2022, at which time the court sentenced Else to 18 to 40 years' incarceration, followed by one year of re-entry supervision. Else did not file post-sentence motions. He filed this timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Else raises the following claim for our review:

> Did the trial court abuse its discretion when it imposed a manifestly excessive sentence of total confinement of eighteen to forty years followed by one year of consecutive re-entry supervision, where the court: (1) failed to consider the mitigating factors enumerated in 42 Pa.C.S.A. § 9721, such as Else's limited criminal history and rehabilitative needs; and (2) placed undue weight on the impact of the offense on the victims and failed to give weight other factors enumerated in section 9721?

Brief of Appellant, at 9 (reworded for clarity).

Else's claim raises a challenge to the discretionary aspects of his sentence. Such a claim does not entitle an appellant to review as a matter of right. **Commonwealth v. Swope**, 123 A.3d 333, 337 (Pa. Super. 2015). Rather, before this Court can address such a challenge, an appellant must invoke this Court's jurisdiction by: (1) filing a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) including in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) raising a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. **Id.**

Here, Else filed a timely notice of appeal and included a Rule 2119(f) statement in his brief. However, he did not make an oral motion for reconsideration at sentencing or file a written post-sentence motion seeking reconsideration of his sentence. *See* Pa.R.A.P. 720. Accordingly, both the trial court and the Commonwealth ask that we find his claim waived. Else argues that he preserved his challenge by "address[ing] the circumstances constituting mitigation during the sentencing hearing, before a sentence had been imposed." Brief of Appellant, at 20. In support of his assertion that he preserved his sentencing claim, Else cites *Commonwealth v. Kittrell*, 19 A.3d 532 (Pa. Super. 2011). There, the appellant raised a challenge to the discretionary aspects of his sentence. Although he had not filed a post-sentence motion for reconsideration, the Court did not find waiver because he "made an oral motion challenging the sentence on the ground raised" on appeal. *Id.* at 538.

*Kittrell* is readily distinguishable. Here, prior to the imposition of sentence, defense counsel argued for mitigation. However, unlike in *Kittrell*, counsel made no oral motion for reconsideration on the basis of the court's purported failures to consider mitigating factors or properly weigh the section 9721 factors. Because there is a distinction between arguing for the imposition of a mitigated sentence and moving for reconsideration on that basis—thus, allowing the trial court to promptly correct its alleged error—we are constrained to find Else's claim waived. *See Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003) (noting purpose of requirement that

defendant raise sentencing issue either at sentencing or in timely post-sentence motion is to give judge opportunity to reconsider or modify sentence on that basis).

Judgment of sentence affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: *12/8/2022*