J-S20029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALLISON RENEE CHERRY | : | |
| | : | |
| Appellant | : | No. 1293 MDA 2017 |

Appeal from the Judgment of Sentence August 10, 2017
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001775-2013

BEFORE: GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 29, 2018**

Allison Renee Cherry appeals from the judgment of sentence imposed on August 10, 2017 in the Centre County Court of Common Pleas, following her revocation from a county intermediate punishment ("IP") program. The court sentenced Cherry to a term of 12 months to five years' incarceration. Cherry raises claims regarding the sufficiency of the evidence in sustaining her IP violations and the discretionary aspects of her sentencing. Based on the following, we affirm.

On July 4, 2013, a State College police officer found Cherry passed out in a gas station parking lot. The officer detected a strong odor of alcohol and observed Cherry to have bloodshot eyes and slurred speech. She admitted she had been drinking and she performed unsatisfactorily on the field sobriety

tests. Video surveillance from the gas station confirmed that Cherry was driving. Cherry was taken to the hospital and after agreeing to a blood draw, the results revealed her blood alcohol content was 0.226%. *See generally*, Affidavit of Probable Cause, 8/12/2013. She was charged with various crimes related to the incident and on January 23, 2014, she pled guilty to driving under the influence of alcohol ("DUI").[1] On March 27, 2014, the court sentenced Cherry to a term of five years' IP in the Centre County DUI Court program.

Since that time, Cherry committed numerous violations of her IP sentence and received five notices of those violations in the form of written warnings on April 8, 2015, August 25, 2015, September 21, 2015, October 13, 2015, and June 28, 2017.[2] Subsequently, on July 31, 2017, Cherry

---

[1] *See* 75 Pa.C.S. § 3802(c).

[2] With respect to each violation notification, the court did not revoke Cherry's IP but did warn of potential ramifications for misconduct. As to her first violation, the court imposed a sanction of one month of enhanced curfew compliance/electronic monitoring. As to her second violation, the court instructed Cherry to follow her plan of action until she could be placed in a rehabilitation facility. Subsequently, on August 27, 2015, the court issued an order, requiring that Cherry attend and successfully complete an inpatient treatment program at Pyramid Healthcare. With respect to her third violation, Cherry received a sanction of one month of enhanced curfew compliance/electronic monitoring, followed by 60 days of Transdermal Alcohol Detection. Cherry did not receive any new sanctions with regard to her remaining violations.

received her sixth notice of violations. No sanctions were imposed at the time, but she was notified of a revocation hearing.

At the conclusion of the revocation hearing[3] on August 10, 2017, the court found Cherry violated conditions #1, #2, #4, #10, and #11 of her IP sentence. The court explained its determination as follows:

> [T]his Court revoked [Cherry]'s Intermediate Punishment because it found that [she] had violated Conditions 1, 2, 4, 10, and 11 of the Intermediate Punishment. DUI Condition 1 states that [Cherry] had to comply with all municipal, county, state, and federal criminal laws, as well as provisions of the Vehicle Code, Controlled Substance, Drug, Device, and Cosmetic Act, and the Liquor Code. It was alleged that [Cherry] violated DUI Condition 1 when she pled guilty to a Public Drunkenness and Similar Misconduct charge for incidents occurring on August 23, 2015. [Cherry] also allegedly violated Condition 2, In-Home Detention/Electronic Monitoring, by leaving her residence on February 22, 2015 without authorization. [Cherry] allegedly violated Condition 4, Leaving the Commonwealth Without Permission, when she travelled to the Carolinas from July 25-29, 2017 without permission.
>
> [Cherry] allegedly violated condition 10, Abstention from Alcohol/Non-Prescribed Drugs on several occasions. First[,] she admitted to having alcoholic beverages on August 15, 21, and 22, of 2015. Several alcoholic beverages/empty alcoholic beverage containers were found at her approved residence on June 27, 2017 allegedly violating Condition 10. [Cherry] allegedly violated condition 10 when she tested positive for EtG (alcohol). She admitted that she had consumed alcoholic beverages at an establishment selling alcohol on April 30, 2017 and June 26, 2017.
>
> [Cherry] allegedly violated Condition 11, Entering an Establishment that Sells Alcohol. [Cherry] allegedly violated condition 11 after she admitted that she was at Indigo Night Club/Bar drinking alcohol on August 21 and 22 of 2015. [Cherry] also admitted to violating condition 11 on April 30, 2017 and June

_____

[3] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

26, 2017 by drinking alcohol at Pickles Bar. In total [Cherry] received six notifications of violations for the incidents listed above since entering the DUI Court Program by Court Order of March 27, 2014.

Trial Court Opinion, 10/6/2017, at 1-2. The court then revoked Cherry's IP sentence and imposed a term of 12 months to 5 years in state correctional institution. This timely appeal follows.[4]

In her first argument, Cherry challenges the sufficiency of the evidence regarding her revocation, complaining the court should not have revoked her IP sentence based on her prior conduct in 2015 because those violations had been previously subject to court sanctions, and therefore, the double jeopardy clause[5] applies. *See* Cherry's Brief 15. Specifically, she states:

> The double jeopardy clause of the constitution does not preclude, as double punishment, a second sentencing where there have been violations of a conditional sentence like probation or intermediate punishment. Double jeopardy does not preclude the remand for a new revocation hearing where a reviewing court has determined that the evidence presented at the first revocation hearing was insufficient to sustain the violation.
>
> It does not follow, as the Commonwealth suggests, that principles grounded in double jeopardy do not apply to the revocation process. Collateral estoppel bars the Commonwealth

---

[4] On August 17, 2017, the trial court ordered Cherry to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Cherry filed a concise statement on September 1, 2017. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 6, 2017.

[5] *See Commonwealth v. Wilson*, 147 A.3d 7, 13 (Pa. Super. 2016) ("The double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of denying him a fair trial.") (citation omitted).

from revoking parole based on conduct for which the probationer was tried and acquitted prior to the violation hearing. It also invalidates a probation violation based solely on a new conviction that is subsequently vacated on appeal.

> *Res judicata* differs from collateral estoppel only in that the latter contemplates different adjudicative forums while the former contemplates identical adjudicative forums. *Res judicata* recognizes the sanctity of final judgment on a litigated claim and protects the rights of the parties by barring the re-litigation of that claim in a subsequent proceeding in the same forum. In the context of probation and parole, it has been used by the Commonwealth Court to bar a second revocation hearing where the Parole Board found insufficient evidence of the claim at the first hearing.

> In the instant matter, revoking Ms. Cherry's intermediate punishment based on the 2015 conduct was barred by *res judicata*. Unarguably, she was served with a notification of violations for the 2015 conduct and a final determination was made by the court that sanctions short of revocation and re-sentencing was appropriate punishment for that conduct.

*Id.* at 15-17 (citations omitted).

We are guided by the following:

> A challenge to the sufficiency of the evidence is a question of law subject to plenary review. We must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the offenses. A reviewing court may not weigh the evidence or substitute its judgment for that of the trial court.

**Commonwealth v. Perreault**, 930 A.2d 553, 558 (Pa. Super. 2007) (citations and internal quotations omitted), *appeal denied*, 945 A.2d 169 (Pa. 2008).

"Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." *Id*.[6]

> When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison. In order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation.

*Commonwealth v. Allshouse*, 33 A.3d 31, 37 (Pa. Super. 2011) (quotation marks and citations omitted), *appeal denied*, 49 A.3d 441 (Pa. 2012). "A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct."[7] *Commonwealth v. Ortega*, 995 A.2d 879, 886 (Pa. Super. 2010), *appeal denied*, 20 A.3d 1211 (Pa. 2011). "A trial court does not necessarily abuse its discretion in imposing a seemingly harsh post-revocation sentence where the defendant originally received a lenient

---

[6]  This Court has previously held the revocation of a county intermediate punishment sentence is equivalent to the revocation of probation. **See Commonwealth v. Philipp**, 709 A.2d 920, 921 (Pa. Super. 1998); **see also Commonwealth v. Melius**, 100 A.3d 682, 685-686 (Pa. Super. 2014).

[7]  "[T]he reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct. Rather, this Court has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated[.]" **Commonwealth v. Ortega**, 995 A.2d at 886 (citations and internal quotations omitted).

sentence and then failed to adhere the conditions imposed on him." ***Commonwealth v. Schutzues***, 54 A.3d 86, 99 (Pa. Super. 2012) (citation omitted), *appeal denied*, 67 A.3d 796 (Pa. 2013). Lastly, "technical violations are sufficient to trigger the revocation of probation." ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000) (citation omitted).

Pursuant to 42 Pa.C.S. § 9773, a trial court may "revoke a sentence of county intermediate punishment upon proof of a violation of specific conditions of the sentence." 42 Pa.C.S. § 9773(b). Additionally, Subsection (c) requires that before doing so, the trial court must conduct a hearing "at which the court shall consider the record of the initial sentencing proceeding as well as the conduct of the defendant while serving a sentence of county intermediate punishment." 42 Pa.C.S. § 9773(c). ***See also*** Pa.R.Crim.P. 708 (violation of probation, intermediate punishment, or parole: hearing and disposition).

Moreover, because Cherry argues the doctrines of collateral estoppel and *res judicata* apply, we note: Both doctrines "preclud[e] parties from contesting matters that they have had a full and fair opportunity to litigate." ***Taylor v. Sturgell***, 553 U.S. 880, 892 (2008) (internal quotation marks and citations omitted). Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." ***Commonwealth v. Castro***, 856 A.2d 178, 181-82 (Pa. Super. 2004). "Under *res judicata*, a final judgment on the merits of an action

- 7 -

precludes the parties or their privies from relitigating issues that were or could have been raised in that action[.]" *In re Stevenson*, 40 A.3d 1212, 1222 (Pa. 2012), *quoting* *Allen v. McCurry*, 49 U.S. 90, 94 (1980).

Here, the court explained its rationale for revoking Cherry's IP sentence as follows:

> This Court found that the preponderance of evidence presented supported the allegations that [Cherry] violated [] Conditions 1, 2, 4, 10, [and] 11. This Court notes, with heartfelt regret, that [Cherry] was unable to follow the DUI Court Conditions despite [Cherry] receiving leniency on many opportunities in the hopes of rehabilitation. The six notices of violations demonstrate that [Cherry] had continuously struggled with rehabilitation while involved in the Intermediate Punishment. The evidence before the Court demonstrated that Intermediate Punishment was no longer a viable means of rehabilitating [Cherry] and therefore revocation was in order.
>
> The first issue complained of by [Cherry] concerning Conditions 1 and 2 is that the incidents occurred at least two years ago. This statement demonstrates that [Cherry] had difficulty adhering to the Conditions of the Intermediate Punishment for several years. This was further evidence that Intermediate Punishment was not a viable means of rehabilitating [Cherry] and therefore revocation was in order.
>
> The second issue complained of by [Cherry] concerning Conditions 1 and 2 is that [she] already suffered court sanctions for the conduct at the time. This argument seems to implicate collateral estoppel as the argument being asserted by [Cherry]. Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).
>
> Sanctions are a part of the Intermediate Punishment and are an appropriate condition since they are intended to effectuate rehabilitation and reintegration into society. The sanctions allow the Court to discipline a [probationer] without having to revoke the Intermediate Punishment. The sanction process starts when

the DUI team discovers a [probationer] violated a condition of the Intermediate Punishment. Then the DUI team meets with this Court to discuss whether the violation requires a sanction and if so what sanction should the Court issue. Then on the day of the DUI Court the DUI team initiates the discussion of the violation. The [probationer] then has an opportunity to respond before the sanction is issued. The sanctioning process for DUI Court is not a judicial one but an administrative one. There is not an ultimate fact which has been determined by a valid and final judgment in the DUI Court sanctioning process which would trigger collateral estoppel. Furthermore these violations demonstrate that the DUI Court had tried to be lenient in the past in order for the rehabilitation to succeed but [Cherry] was not able to comply with the Conditions and therefore the Intermediate Punishment was revoked.

…

Assuming arguendo, [Cherry]'s violations of Conditions 1, 2, and 4 were not proper for consideration, this Court would still have grounds for finding revocation was in order for the violations of Conditions 10 and 11. [Cherry] admitted to entering an establishment that sells alcohol, admitted to consuming alcohol, and alcohol was found at her residence. These violations alone demonstrate that Intermediate Punishment was not a viable means of rehabilitating [Cherry] and therefore revocation was in order.

Trial Court Opinion, 10/6/2017, at 3-5.

We agree with the court's sound rationale.

*The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be.* Congress has established many types of criminal sanctions under which the defendant is unaware of the precise extent of his punishment for significant periods of time, or even for life, yet these sanctions have not been considered to be violative of the Clause. Thus, there is no double jeopardy protection against revocation of probation and the imposition of imprisonment. (citation omitted). There are other situations where probation may be revoked and sentence of imprisonment imposed. (citations omitted).

- 9 -

***Commonwealth v. Mysnyk***, 527 A.2d 1055, 1056-1057 (Pa. Super. 1987) (italics in original), *appeal denied*, 538 A.2d 498 (Pa. 1987).

Here, Cherry's 2015 violations of Conditions 1 and 2, and resulting sanctions, were not being relitigated by the trial court during the August 10, 2017, revocation hearing. Moreover, the Commonwealth was not pursuing these claims for a second time but rather, was requesting the trial court to consider Cherry's multiple failures to adhere to the conditions of her IP in determining whether or not to revoke it.[8] N.T., 8/10/2017, at 3-4, 7-8. Additionally, as noted by the trial court, these sanctions were administrative in nature, not criminal, and based on the circumstances, it was evident that Cherry was incapable of following simple DUI Court conditions despite receiving numerous leniency opportunities.[9] Cherry's arguments concerning collateral estoppel and *res judicata* do not persuade us otherwise.

Nevertheless, as the trial court found, even if the prior violations were not proper for review, it would still have grounds for finding revocation based on the fifth and sixth violations of Conditions 4, 10, and 11 in 2017.[10] The

_____

[8] With respect to the first four violations, there were no formal proceedings, resulting in revocation. The court either ordered Cherry to one-month periods of enhanced curfew compliance/electronic monitoring, placement at a rehabilitation facility, or imposed no sanction.

[9] It merits repeating that Cherry committed six violations since her sentencing in March of 2014.

[10] Cherry's counsel admitted to her conduct supporting those violations. ***See*** N.T., 8/10/2017, at 7.

court acted within its province when it determined that IP did not satisfy Cherry's rehabilitative needs. **See Allshouse**, **supra**. Furthermore, it merits mention that when Cherry signed her "Centre County DUI Court Program – Conditions of In-Home Detention/Electronic Monitoring," she agreed to the following:

> I acknowledge that the Intermediate Punishment Program/In-home Detention Program has been explained to me, and I have been advised that under the law, the Court may at any time, for cause, revoke or modify any condition of your Intermediate Punishment Sentence.
>
> I realize I am subject to arrest and incarceration, for cause, by the Centre County Probation Department. The Court may, if it sees fit, revoke my Intermediate Punishment Sentence and impose an appropriate sentence.

N.T., 8/10/2017, Exhibit - Centre County DUI Court Program – Conditions of In-Home Detention/Electronic Monitoring, 6/24/2014, at unnumbered 2.[11] Accordingly, we conclude the trial court properly revoked Cherry's IP sentence, and her first argument fails.

In her second argument, Cherry contends that her sentence is excessive. Cherry's Brief at 18. Specifically, she states:

> Absent the summary public drunkenness conviction and [the] 2015 technical violations, the [trial] court articulated that the April 2017 conduct of entering a bar, consuming, and possessing alcoholic beverages "… alone demonstrated that Intermediate

---

[11] In her written guilty plea colloquy, Cherry indicated that she understood her DUI offense carried a possible maximum prison term of five years, her simple assault offense carried a possible maximum prison term of two years, and that her DUI offense had a mandatory minimum sentence of one year. **See** Written Guilty Plea Colloquy, 3/13/2014, at unnumbered 2.

Punishment was not a viable means of rehabilitating [Cherry] and therefore revocation was in order." This reasoning ignores the fact that at the time of the relapse it deemed her continued outpatient counseling sufficient to address this brief relapse. One is left with the inescapable conclusion that she was not "disingenuous" in her [concise statement] and she was revoked because that vacation she took with her girlfriend was the last straw for her probation officer. There were no allegations of other violations during this [sic] four days in July.

No one challenged her testimony she retained her sobriety. There was nothing in the 2017 violations which would indicate that it was likely that she would commit a future crime. There was no allegations of operating an automobile during the entire course of her intermediate punishment. There was no challenge to testimony that she had a good job that she would lose if sent to state prison.

Cherry's Brief at 19-20 (record citation omitted).[12] Cherry's complaint challenges the discretionary aspects of her sentence.

"[T]his Court's scope of review in an appeal from a revocation sentencing includes discretionary sentencing challenges." ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1034 (Pa. Super. 2013) (*en banc*). Furthermore,

"[t]here is no absolute right to appeal when challenging the discretionary aspect of a sentence." ***Commonwealth v. Crump***, 995 A.2d 1280, 1282 (Pa. Super. 2010); 42 Pa.C.S. § 9781(b). Rather, an "[a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." ***Crump, supra*** at 1282. In determining whether a substantial question exists, this Court does not examine the merits of the sentencing claim. ***Commonwealth v. Tuladziecki***, 513 Pa. 508, 522 A.2d 17 (Pa. 1987).

---

[12] In her Rule 2119(f) statement, Cherry maintains that the trial court "abused its discretion in sentencing her to an excessive sentence of state incarceration based on mere technical violations of supervision." Cherry's Brief at 12.

In addition, "issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Commonwealth v. Kittrell*, 2011 PA Super 60, 19 A.3d 532, 538 (Pa. Super. 2011). Furthermore, a defendant is required to preserve the issue in a court-ordered Pa.R.A.P. 1925(b) concise statement and a Pa.R.A.P. 2119(f) statement. *Commonwealth v. Naranjo*, 2012 PA Super 183, 53 A.3d 66, 72 (Pa. Super. 2012).

*Cartrette*, at 1042.

A review of the record reveals that while Cherry filed a timely notice of appeal, and included in her appellate brief a statement of reasons relied upon for appeal pursuant to *Tuladziecki*, *supra*, and Pa.R.A.P. 2119(f), she did not raise any objections to the sentence at sentencing and she did not file a post-sentence motion for reconsideration. However, there is no indication in the record that the trial court advised her of those post-sentence rights when she was sentenced following the revocation of her IP. *See* N.T., 8/10/2017, at 15-16. Therefore, we decline to find waiver on this basis. *See Commonwealth v. Patterson*, 940 A.2d 493, 498 (Pa. Super. 2007) ("The courts of this Commonwealth have held that a court breakdown occurred in instances where the trial court, at the time of sentencing, either failed to advise Appellant of his post-sentence and appellate rights or misadvised him."), *appeal denied*, 960 A.2d 838 (Pa. 2008). Therefore, we must determine whether she has raised a substantial question justifying our review.

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific

provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted). An allegation that the trial court failed to consider the requirements of Section 9771(c) before imposing a sentence of total confinement raises a substantial question that the sentence imposed was "inconsistent with a specific provision of the Sentencing Code." ***Id.*** Moreover, "a claim that a particular probation revocation sentence is excessive in light of its underlying technical violations can present a question that we should review." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1253 (Pa. Super. 2006) (citation omitted). Accordingly, we proceed to an evaluation of Cherry's claim on appeal.

The Sentencing Code provides that, similar to the revocation of a probationary sentence, when a trial court revokes a county intermediate punishment sentence, "the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing." 42 Pa.C.S. § 9773(b). Moreover, Section 9771(c) precludes a trial court from imposing a sentence of total confinement upon revocation of probation unless the court finds one or more of the following:

> (1) the defendant has been convicted of another crime; or
>
> (2) the conduct of the defendant indicates that it is likely that [s]he will commit another crime if [s]he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(c).

In explaining Cherry's sentence, the court stated:

The final issue complained of on Appeal concerns whether the Court abused its discretion in sentencing [Cherry] for going on a short vacation without first receiving written permission. [Cherry] travelled to the Carolinas from July 25-29,2017 without permission from her probation officer. This violation was one of many considered by the Court including the violation of Conditions 10 and 11. It would be disingenuous to state that this Court sentenced [Cherry] to state incarceration for a short vacation without receiving permission when there was evidence of other violations before the Court.

Trial Court Opinion, 10/6/2017, at 5.

We find no abuse of discretion. "Technical violations can support revocation and a sentence of incarceration when such violations are flagrant and indicate an inability to reform." ***Commonwealth v. Carver***, 923 A.2d 495, 498 (Pa. Super. 2007). Cherry's conduct has repeatedly demonstrated that a term of imprisonment was essential to vindicate the authority of the court. While focusing on the incidents that took place in 2017, Cherry committed multiple, new violations, which broke three conditions of her IP sentence. Even after Cherry received her fifth warning concerning her violations, she still violated the terms for a sixth time within a one month period. It is evident from the record that Cherry was not taking advantage of the opportunities given to her by the trial court, including inpatient treatment program, she was not reforming her behavior, and she had a clear disregard

- 15 -

for the authority of the court when she left the state without informing her probation officer. Accordingly, the trial court did not abuse its discretion in sentencing Cherry to a period of total confinement with regard to her IP revocation. Therefore, Cherry's discretionary aspects of sentencing claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/29/2018