J-A16036-17

2017 PA Super 305

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| ANTHONY MACHICOTE, | : | |
| Appellant | : | No. 1621 WDA 2016 |

Appeal from the Judgment of Sentence August 19, 2016
in the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001958-2003

BEFORE:   STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER,[*] J.

OPINION BY STRASSBURGER, J.:          **FILED SEPTEMBER 26, 2017**

Anthony Machicote (Appellant) appeals from the August 19, 2016 judgment of sentence imposed following a resentencing hearing pursuant to *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013) ("*Batts I*"). We affirm.

> On November 10, 2003, [Appellant (then age 17)] and Jeremy Melvin executed their plan to escape from the George Junior Republic Facility, a housing facility for delinquent and dependent children [located in Pine Township, Mercer County]. [Appellant] called a night supervisor, Wayne Urey, Jr., [("the victim")] to [Appellant's] room by faking an illness. Melvin came up behind [the victim] and locked him in a choke hold while [Appellant] tied [the victim's] legs with a sheet. Melvin put a sock in [the victim's] mouth and tied a sheet around it. [Appellant] and Melvin stole [the victim's] money, keys, and car and fled from the facility. Later that day, [Appellant] and Melvin confessed the details of the incident to a school security guard and turned themselves in to police. [The victim] suffocated as a result of the incident.

---

[*] Retired Senior Judge assigned to the Superior Court.

Both [Appellant] and Melvin were charged as adults with criminal homicide, robbery, and related charges. On November 3, 2004, [Appellant] pled guilty to second-degree murder. In exchange for the guilty plea, the Commonwealth *nol prossed* the remaining charges. In addition, the Commonwealth agreed to provide [Appellant] with a letter indicating that it would take no position if [Appellant] filed an application for commutation of sentence after serving twenty-five years of imprisonment. On January 6, 2005, the trial court sentenced [Appellant] to serve a term of life imprisonment. [Appellant] did not file a direct appeal.

On January 9, 2006, [Appellant] filed a timely *pro se* PCRA petition, which was his first. Appointed counsel then filed an amended PCRA petition, and the PCRA court denied relief. On May 30, 2007, this Court affirmed the denial of PCRA relief, and the Pennsylvania Supreme Court denied [Appellant's] petition for allowance of appeal. **Commonwealth v. Machicote**, [] 929 A.2d 242 (Pa. Super. 2007) (unpublished memorandum), *appeal denied*, 932 A.2d 1287 (Pa. 2007).

On August 22, 2012, [Appellant] filed an untimely second PCRA petition, in which he sought to have his life sentence without parole vacated, and to be resentenced pursuant to **Miller v. Alabama**, [567 U.S. 460, 479 (2012)]. Disposition of the PCRA petition was continued several times awaiting a ruling on the applicability of **Miller** in Pennsylvania. On September 30, 2013, the PCRA court entered an order granting [Appellant's] request for relief on the grounds that the **Miller** decision rendered the life sentence unlawful. The Commonwealth appealed and then withdrew the appeal. Thereafter, the Commonwealth's appeal was reinstated, but it was ultimately dismissed due to failure to file a brief.

Consequently, [Appellant] was resentenced on June 24, 2014, to a term of life in prison with parole, with a recommendation that [Appellant] not be paroled until his 58th birthday. On July 2, 2014, the Commonwealth filed a post-sentence motion alleging that the lower court lacked the authority to resentence [Appellant] in light of **Commonwealth v. Cunningham**, 81 A.3d 1 (Pa. 2013). The motion was denied on July 2, 2014. [An appeal by the Commonwealth followed.]

*Commonwealth v. Machicote*, 122 a.3d 1144 (Pa. Super. 2015) (unpublished memorandum at 1-3).

On June 24, 2015, a panel of this Court vacated the June 24, 2014 judgment of sentence and remanded for the lower court to "reinstate the original judgment of sentence imposed upon" Appellant. *Id.* at 9.

> [The lower c]ourt resentenced [Appellant], in accordance with the [o]rder of the Superior Court, on September 11, 2015, to a term of life in prison without parole.
>
> On March 22, 2016, [Appellant] filed a third PCRA [petition] alleging his sentence was unlawful in light of *Montgomery v. Louisiana*, — US —, [136 S.Ct. 718] (2016).
>
> At a conference on April 22, 2016, [the PCRA c]ourt vacated the sentence of September 11, 2015, and scheduled sentencing[.]
>
> On August 19, 2016, [the PCRA c]ourt sentenced [Appellant] to a term of imprisonment of not less than 30 years nor more than life.
>
> [Appellant] filed a post-sentence motion. That motion was denied on August 30, 2016, without a hearing. This appeal followed.

PCRA Court Opinion, 11/3/2016, at 5-6.

Both Appellant and the PCRA court have complied with the mandates of Pa.R.A.P. 1925. Appellant raises the following issues for this Court's review.

> A. The only statutorily authorized punishment for second-degree murder where the defendant was convicted before June 25, 2012 is life without parole. As a matter of federal constitutional law, a juvenile such as [Appellant] cannot be automatically sentenced to life without parole. Was the [PCRA] court's sentence of 30 years to life illegal because the General Assembly has not

authorized a constitutional punishment for those in [Appellant's] position and, therefore, should he be sentenced to the lesser included offense of third-degree murder?

B. Did the trial court abuse its discretion by resentencing [Appellant], a juvenile convicted of second-degree murder and facing a potential sentence of life without parole, without fully considering [Appellant's] youth and development, as required under *Miller*[], and *Commonwealth v. Knox*, 50 A.3d 732 (Pa. Super. 2012)?

C. Did the trial court abuse its discretion by simultaneously granting [Appellant's] request for funds to hire an expert to perform a mitigation study while denying him a continuance to locate and retain an expert to undertake this mitigation study?

Appellant's Brief at 2-3 (PCRA court answers omitted).

In his first issue on appeal, Appellant presents a challenge to the legality of his sentence, arguing that the PCRA court had no valid statutory authority to impose a term of years sentence with a maximum term of life imprisonment at his resentencing and, because the crime at issue here was committed before June 25, 2012, the only possible legal sentence is "on the lesser included offense of third[-]degree murder or the underlying felony of robbery." Appellant's Brief at 25-49. "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Brown*, 159 A.3d 531, 532 (Pa. Super. 2017) (citation omitted).

By way of background, in 2013, our Supreme Court decided *Batts I*, which addressed the effect of the holding in *Miller* on incarcerated Pennsylvanians serving mandatory life sentences without the possibility of

parole (LWOP) for homicides committed while those persons were juveniles (so-called "juvenile lifers"). Applying this new precedent, the Court in *Batts I* held that

> [the] argument that the entire statutory sentencing scheme for first-degree murder has been rendered unconstitutional as applied to juvenile offenders is not buttressed by either the language of the relevant statutory provisions or the holding in *Miller*. Section 1102, which mandates the imposition of a life sentence upon conviction for first-degree murder, *see* 18 Pa.C.S. § 1102(a), does not itself contradict *Miller*; it is only when that mandate becomes a sentence of [LWOP] as applied to a juvenile offender—which occurs as a result of the interaction between Section 1102, the Parole Code, see 61 Pa.C.S. § 6137(a)(1), and the Juvenile Act, see 42 Pa.C.S. § 6302—that *Miller*'s proscription squarely is triggered. [] *Miller* neither barred imposition of [an LWOP] sentence on a juvenile categorically nor indicated that a life sentence with the possibility of parole could never be mandatorily imposed on a juvenile. Rather, *Miller* requires only that there be judicial consideration of the appropriate age-related factors set forth in that decision prior to the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile.

*Batts I*, 66 A.3d at 296. The Court recognized the difference in potential penalty between juvenile offenders like Batts, who was tried and convicted of first-degree murder prior to the issuance of *Miller*, and those who committed offenses after the Supreme Court's decision in *Miller*.

> As to the former, it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing. Defendants in the latter category are subject to high mandatory minimum sentences and the possibility of life without parole, upon evaluation by the sentencing court of criteria along the lines of those identified in *Miller*.

*Id.* at 297.

- 5 -

Thus, the Court remanded Batts' case for resentencing and instructed the trial court to consider the non-inclusive list of factors outlined in *Miller* before determining whether to impose upon Batts an LWOP sentence.

Following a hearing, Batts was resentenced to LWOP. He took a second appeal to this Court, which affirmed his new judgment of sentence. Our Supreme Court granted Batts' petition for allowance of appeal to address Batts' contention, *inter alia*, that the Court should exercise "its authority under the Pennsylvania Constitution to promulgate procedural safeguards [for juveniles convicted of first- and second-degree homicide] including (a) a presumption against juvenile [LWOP sentences]; (b) a requirement for competent expert testimony; and (c) a "beyond a reasonable doubt" standard of proof[.]" *Commonwealth v. Batts*, — A.3d —, 2017 WL 2735411 at *11 (Pa. 2017) (*Batts II*).

In June of 2017, while the instant case was pending, our Supreme Court issued its opinion in *Batts II*. The Court noted that,

> [d]espite the passage of four years since we issued our decision in *Batts I*, the General Assembly has not passed a statute addressing the sentencing of juveniles convicted of first-degree murder pre-*Miller*, nor has it amended the pertinent provisions that were severed in *Batts I*. As we have previously stated, the General Assembly is quite able to address what it believes is a judicial misinterpretation of a statute, and its failure to do so in the years following the *Batts I* decision gives rise to the presumption that the General Assembly is in agreement with our interpretation.

*Batts II*, 2017 WL 2735411 at *25 (footnotes, some citations and quotation marks omitted).

- 6 -

However, addressing the specific issues raised by Batts, the Court determined that, "in Pennsylvania, a faithful application of the holding in **Miller**, as clarified in **Montgomery**,[1] requires the creation of a presumption against sentencing a juvenile offender to life in prison without the possibility of parole." **Batts II**, 2017 WL 2735411 at *31. The Court then placed the burden of rebutting this presumption on the Commonwealth, concluding as follows.

> To rebut the presumption, the Commonwealth has the burden to prove, beyond a reasonable doubt, that the juvenile offender is permanently incorrigible and thus is unable to be rehabilitated. Consistent with the mandate of **Miller** and **Montgomery**, for a life-without-parole sentence to be constitutionally valid, the sentencing court must find that the juvenile offender is permanently incorrigible and that rehabilitation would be impossible. The Commonwealth's evidence and the sentencing court's decision must take into account the factors announced in **Miller** and section 1102.1(d) of the Crimes Code. Even if the Commonwealth satisfies its burden of proof, the sentencing court is not required to impose a life-without-parole sentence upon a juvenile offender.

**Batts II**, 2017 WL 2735411 at *37–38.

Finally, and of note with respect to the current appeal, our Supreme Court reaffirmed the sentencing scheme applicable to juvenile offenders for whom the sentencing court determines LWOP sentences are inappropriate

---

[1] As the Court explained, **Montgomery** "means that only 'the rarest of juvenile offenders' are eligible to receive a sentence of [LWOP]. Only in 'exceptional circumstances' will [LWOP] be a proportionate sentence for a juvenile." **Batts II**, 2017 WL 2735411 at *31 (citations and footnote omitted).

(*i.e.*, imposition of a term-of-years to life sentence as discussed above) and specifically "instruct[ed] sentencing courts to look to the mandatory minimum sentences set forth in section 1102.1(a) for guidance in setting a minimum sentence for a juvenile convicted of first-degree murder prior to *Miller*." *Batts II*, 2017 WL 2735411 at *24 n.17.

In creating the aforementioned sentencing scheme, the Court expressly rejected the claim of Batts and his *amici*, which Appellant herein now argues, that there is no legislatively authorized sentence for juveniles convicted of first-degree murder prior to 2012. *Id.* at *18-22. The Court also rejected Batts' contentions that the forty year maximum penalty for third-degree murder is the only legal alternative and that severance of the statute is impossible. *Id.* at *23-27. Importantly, the Court held, *inter alia*, that a trial court, in resentencing a juvenile offender convicted prior to *Miller*, was constitutionally permitted to impose a minimum term-of-years sentence and a maximum sentence of life imprisonment, thus "exposing these defendants to parole eligibility upon the expiration of their minimum sentences"[2]. *Batts II*, 2017 WL 2735411 at *21. We are bound by our Supreme Court's decision. Thus, we disagree with Appellant that his resulting thirty-years-to-

---

[2] Batts was sentenced for the crime of first degree murder, while Appellant herein pled guilty to murder in the second degree. However, we discern no difference that would place Appellant's claim outside of the *Batts* analysis.

life sentence is illegal and, as a result, we hold that he is not entitled to relief on his first claim.

Appellant next claims that the PCRA court erred in resentencing him without "fully considering [his] youth and development" as required by **Miller** and **Knox.** This claim arguably implicates the discretionary aspects of his sentence.[3]

---

[3] As the Court in **Batts II** explained,

> The **Miller** Court concluded that sentencing for juveniles must be individualized. This requires consideration of the defendant's age at the time of the offense, as well as "its hallmark features," including:

>> immaturity, impetuosity, and failure to appreciate risks and consequences[;] ... the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional[;] ... the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him[;] ... that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys[;] ... [and] the possibility of rehabilitation ... when the circumstances [*i.e.* (the youthfulness of the offender)] most suggest it.

**Batts II**, 2017 WL 2735411 at *14-15 (citations omitted). The **Batts** decisions make clear that, the court must consider the **Miller** factors in cases where the Commonwealth is attempting to meet its burden of overcoming the presumption against juvenile LWOP sentences. **Batts II**, 2017 WL 2735411 at*14-15. However, because the PCRA court determined
*(Footnote Continued Next Page)*

- 9 -

It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.

> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Disalvo*, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted).

Appellant has satisfied the first three requirements: he timely filed a notice of appeal, he sought reconsideration of his sentence in a post-sentence motion, and he has included a Rule 2119(f) statement in his brief to this Court. We now consider whether he has raised a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯

that an LWOP sentence was inappropriate for Appellant, this issue is moot as application of the *Miller* factors is immaterial. However, to the extent that Appellant's issue can be read to raise a claim that the court failed to consider relevant sentencing factors outlined in the sentencing code, we consider such arguments under the discretionary-aspects-of-sentencing scheme outlined above.

appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

In his 2119(f) statement, Appellant contends that the PCRA court failed to give "adequate, evident consideration of the factors set out in ***Knox***." Appellant's Brief at 25. Such claim does not raise a substantial question. ***Disalvo***, 70 A.3d at 903 ("[A] claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." (citation and quotation marks omitted)).

Even had Appellant stated a substantial question for review, we would affirm on the merits. We review discretionary aspects of sentence claims under the following standard.

> If this Court grants appeal and reviews the sentence, the standard of review is well-settled: sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

***Commonwealth v. Malovich***, 903 A.2d 1247, 1252-53 (Pa. Super. 2006) (citations omitted).

Our review of the sentencing transcript reveals that the lower court did

- 11 -

not abuse its discretion. As the PCRA court explained at sentencing it "[took] into account the comments set forth in [its] sentencing order of June 24, 2014[, and it] reviewed the PSI again." N.T., 8/19/2016, at 45-45. The court found that Appellant "had five misconducts, but they were early, which is understandable[, had] obtained [his] GED, which is appropriate," and was over the age of 15 when the crime occurred. *Id.* The court recognized that "[c]rimes of this nature devastate all families involved" and noted that "[w]hile [Appellant's] intent was not to kill, there was intent to hurt, and hurt severely in the way [the victim] was beaten." *Id.* at 46.

Where the sentencing court here had the benefit of a pre-sentence investigation report, it is presumed to have considered all relevant information. *Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004). Further and as discussed above, our Supreme Court has mandated the lower courts consider the sentencing requirements codified at 18 Pa.C.S. § 1102.1 in fashioning a sentencing scheme for a juvenile homicide offender post-*Miller*. *Batts I*, 6 A.3d at 297. Subsection 1102.1 provides, in relevant part, as follows.

> **(c) Second degree murder.**--A person who has been convicted after June 24, 2012, of a murder of the second degree, second degree murder of an unborn child or murder of a law enforcement officer of the second degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:
>
> > (1) A person who at the time of the commission of the offense was 15 years of age or older shall be

> sentenced to a term of imprisonment the minimum
> of which shall be at least 30 years to life.

18 Pa.C.S. § 1102.1(c).

The PCRA court, in fashioning Appellant's sentence, found persuasive the "logic" of subsection 1102.1(c)(1) and imposed a thirty-year-to-life sentence. N.T., 8/19/2016, at 47. Because Appellant's sentence is compliant with Subsection 1102.1(c)(1) and **Batts II**, we find no reason to disturb it.

Finally, Appellant claims that the PCRA court abused its discretion in granting him additional funds to hire an expert for his resentencing, but simultaneously denying a postponement to allow him to do so. Appellant's Brief at 30-40.

> It is well-established that indigent defendants have a right to access the same resources as non-indigent defendants in criminal proceedings. The state has an affirmative duty to furnish indigent defendants the same protections accorded those financially able to obtain them. Procedural due process guarantees that a defendant has the right to present competent evidence in his defense, and the state must ensure that an indigent defendant has fair opportunity to present his defense.
>
> However, [t]he provision of public funds to hire experts to assist in the defense against criminal charges is a decision vested in the sound discretion of the court and a denial thereof will not be reversed absent an abuse of that discretion.

*Commonwealth v. Konias*, 136 A.3d 1014, 1019 (Pa. Super. 2016) (citations and quotation marks omitted).

Instantly, the court granted Appellant's request for expert funds in the amount of $2,500, but denied a request to continue the case that would permit Appellant to hire a mitigation expert to present a colorable argument as to the **Miller** and **Knox** factors. Appellant's Brief at 30-40. Accordingly, Appellant contends that the court committed reversible error by making it impossible for him to make a persuasive argument with respect to the factors outlined in **Miller** that the United States Supreme Court has identified as relevant considerations for resentencing of juvenile homicide offenders to LWOP sentences. **Id**. at 36-38.

In **Batts I**, which was the prevailing law at the time of Appellant's resentencing, the Court held that the sentencing court "should consider" the **Miller** factors in determining whether a juvenile homicide defender should be subjected to an LWOP sentence; however, the Court was silent as to both the applicable burden of proof and whether expert testimony was necessary to make a **Miller** argument. **Batts I**, 66 A.3d 286 at 297.

In **Batts II**, our Supreme Court clarified the applicable sentencing procedure, holding as follows.

> Pursuant to our consideration of the attendant due process concerns and the definitive language used by the Supreme Court, we conclude that to overcome the presumption against the imposition of a sentence of life without parole for a juvenile offender, the Commonwealth must prove that the juvenile is constitutionally eligible for the sentence beyond a reasonable doubt. In an effort to satisfy this burden, the Commonwealth may present evidence relating to the factors announced in **Miller** and the factors appearing in section 1102.1(d).

Consistent with the requirements of due process and section 1102.1(b), if the Commonwealth seeks to have the sentencing court impose a sentence of life without parole on a juvenile offender, it must provide reasonable notice to the defendant prior to the sentencing hearing.

*Batts II*, 2017 WL 2735411 at *34 (citations omitted). Further, with respect to the necessity of expert testimony, the Court opined,

[t]here is an undeniable appeal to Batts' contention that expert testimony is necessary for a court to determine that a juvenile offender is permanently incorrigible. We decline, however, to go so far as to hold that expert testimony is constitutionally required to rebut the presumption against the imposition of a sentence of [LWOP]. Expert testimony is admissible in Pennsylvania if the information is outside of the common knowledge of the factfinder and the testimony of an expert, so qualified based upon his or her "knowledge, skill, experience, training or education," will aid in the understanding of the fact at issue and the expert utilized a generally accepted methodology. The necessity thereof is thus within the discretion of the sentencing court.

Given the presumption against [LWOP] and the Commonwealth's burden beyond a reasonable doubt to rebut the presumption, it is difficult to conceive of a case where the Commonwealth would not proffer expert testimony and where the sentencer would not find expert testimony to be necessary. Nonetheless, whether expert testimony is required to rebut the presumption against permanent incorrigibility beyond a reasonable doubt will be determined on a case-by-case basis by the sentencing court.

*Batts II*, 2017 WL 2735411 at *34 (citations omitted).

While we certainly agree with Appellant that the PCRA court's orders were contradictory and effectively denied him an expert witness, the *Batts* decisions make clear that, while the court must consider the *Miller* factors in cases where the Commonwealth is attempting to meet its burden of

overcoming the presumption against juvenile LWOP sentences, expert testimony is not constitutionally required. **Batts II**, 2017 WL 2735411 at*14–15.

Moreover, here, the PCRA court recognized that LWOP sentences for juvenile offenders are "appropriate in very limited circumstances" that **did not apply to this case**. N.T., 8/19/2016, at 46. Thus, the issue is now moot because the court ruled that an LWOP sentence was inappropriate for Appellant. Accordingly, this claim fails.

For all of the forgoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2017

- 16 -