J-S50013-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL GLENN CROSBY | : | |
| | : | |
| Appellant | : | No. 1721 WDA 2017 |

Appeal from the Judgment of Sentence October 16, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002371-1996

BEFORE:  BOWES, J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    FILED DECEMBER 27, 2018

Michael Glenn Crosby appeals from the judgment of sentence of thirty-four and one-half years incarceration to life imprisonment, imposed following PCRA relief.  We affirm.

Appellant was resentenced pursuant to Montgomery v. Louisiana, 136 S. Ct. 718 (2016), which held that state courts are required to grant retroactive effect to new substantive rules of federal constitutional law, such as Miller v. Alabama, 567 U.S. 460 (2012).  Miller held unconstitutional mandatory sentences of life imprisonment without the possibility of parole ("LWOP") for offenders, like Appellant, who were under eighteen years of age at the time of their crimes.  He now challenges the legality of his sentence, as well as its discretionary aspects.

On June 27, 1996, twenty-three days shy of his eighteenth birthday, Appellant killed a man by shooting him three times in the face.  Appellant

planned the murder in advance and met with the victim hours beforehand in order to lull him into a false sense of security. Appellant was given the firearm by his co-conspirator, and the evidence suggested that Appellant may have committed the murder in exchange for $4,000, which was not paid.

Appellant was charged with a litany of crimes, and convicted of all counts following a jury trial. He was sentenced to LWOP for first-degree murder, and an aggregate consecutive term of four and one-half to nine years incarceration at the remaining charges.[1] Appellant did not file a direct appeal, but filed two PCRA petitions challenging the constitutionality of his LWOP sentence. Those petitions were denied based on then-governing precedent, and we affirmed both orders on appeal.

Following the decision in Montgomery, Appellant timely filed for PCRA relief. The PCRA court granted the petition and held a resentencing hearing on October 16, 2017, and imposed an aggregate sentence of thirty-four and one-half years to life. At the count of first-degree murder, the court imposed a minimum sentence of thirty years incarceration to a maximum of life imprisonment. At the remaining counts, the court reimposed the original sentences, set to run consecutively to the murder charge. Appellant thereafter filed a post-sentence motion for relief, which was denied. Appellant timely appealed, and complied with the order to file a concise statement of

_____

[1] Specifically, the judge imposed three to six months incarceration for possession of an instrument of crime, six to twelve months for carrying a firearm without a license, and forty-five to ninety months for conspiracy to commit homicide. All sentences were imposed consecutively.

- 2 -

matters complained of on appeal. The court authored its opinion in response, and the matter is ready for our review of the following questions:

> I. Did the sentencing court impose an unconstitutional sentence when it imposed the aggregate minimum sentence of 34½ years, a sentence which is a de facto life sentence as it deprives Appellant of a meaningful opportunity for release?
>
> II. Did the sentencing court fail to follow legal precedent when it focused on the facts of the offense instead of considering whether the Commonwealth proved permanent incorrigibility, irreparable corruption or irretrievable depravity which Appellant would argue the Commonwealth failed to do?

Appellant's brief at 8.

Appellant's first point of error concerns the legality of his sentence, while the second presents a challenge to the discretionary aspects of his sentence. We address each in turn.

In Commonwealth v. Foust, 180 A.3d 416, 427 (Pa.Super. 2018), we reviewed the claim that a sentence imposed post-Miller amounts to a de facto LWOP sentence is a challenge to the legality of the sentence. We agreed that such sentences violate Miller.

> After careful consideration, we hold that a trial court may not impose a term-of-years sentence, which constitutes a de facto LWOP sentence, on a juvenile offender convicted of homicide unless it finds, beyond a reasonable doubt, that he or she is incapable of rehabilitation. In Miller, the Supreme Court of the United States held that states must provide a juvenile convicted of a homicide offense a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation unless the sentencing authority finds that the juvenile is incapable of rehabilitation. See Miller, 567 U.S. at 479, 132 S.Ct. 2455, citing Graham, 560 U.S. at 75, 130 S.Ct. 2011.

. . . . [Miller] broadly stated that juveniles are entitled to a meaningful opportunity for release. We find this to be a strong indication that the Supreme Court of the United States was more focused on the practical realities of a sentence than the name assigned to a sentence. See State ex rel. Morgan v. State, 217 So.3d 266, 273 (La. 2016); Casiano v. Commissioner of Correction, 317 Conn. 52, 115 A.3d 1031, 1047 (2015), cert. denied, ––– U.S. ––––, 136 S.Ct. 1364, 194 L.Ed.2d 376 (2016); Henry v. State, 175 So.3d 675, 679 (Fla. 2015), cert. denied, ––– U.S. ––––, 136 S.Ct. 1455, 194 L.Ed.2d 552 (2016).

Id. at 431-32.

Foust involved the consecutive imposition of two identical thirty years to life imprisonment sentences, one each for the two murdered victims. We established that the individual sentences must be examined, not the aggregate. Therefore, Foust examined the same sentence at issue herein—thirty years to life—as applied to one homicide conviction, and concluded that it was not a de facto LWOP sentence:

There are certain term-of-years sentences which clearly constitute de facto LWOP sentences. For example, a 150–year sentence is a de facto LWOP sentence. Similarly, there are clearly sentences which do not constitute de facto LWOP sentences. A sentence of 30 years to life falls into this category. We are unaware of any court that has found that a sentence of 30 years to life imprisonment constitutes a de facto LWOP sentence for a juvenile offender. Even the study with the shortest life expectancy for an offender in Appellant's position places his life expectancy at 49 years, i.e., beyond 30 years. See Appellant's Brief at 16, citing Casiano, 115 A.3d at 1046.

We explicitly decline to draw a bright line in this case delineating what constitutes a de facto LWOP sentence and what constitutes a constitutional term-of-years sentence. But see Commonwealth v. Dodge, 77 A.3d 1263, 1276 (Pa. Super. 2013), appeal denied, 625 Pa. 648, 91 A.3d 161 (2013) (appearing to hold that a defendant must be parole eligible before he or she turns 90 for it not to be considered a de facto LWOP

- 4 -

sentence). We similarly decline to set forth factors that trial courts must consider when making this determination, i.e., whether they must look to the life expectancy of the population as a whole or a subset thereof and whether the defendant must be given a chance at a meaningful post-release life. We need not confront these difficult questions in this case. Instead, we limit our holding to the facts of this case. A sentence of 30 years to life imprisonment does not constitute a de facto LWOP sentence which entitles a defendant to the protections of Miller.

Id. at 438.

Foust therefore disavowed bright-line rules regarding when a term of years amounts to a de facto LWOP sentence, and held under the facts of the case that a minimum sentence of thirty years was not a de facto LWOP sentence. Thus, Foust left open the possibility that a sentencing judge could consider a host of factors in imposing a sentence that ensures the individual offender has a meaningful opportunity at release. Appellant, citing United States v. Grant, 887 F.3d 131, 136 (3d Cir. 2018), reh'g en banc granted, 905 F.3d 285 (3d Cir. 2018), asks us to follow the lead of our sister court and order an individualized hearing to determine whether a sentence of thirty years amounts to a de facto LWOP sentence.

In Grant, a panel of the United States Court of Appeals for the Third Circuit discussed de facto LWOP sentences and concluded that a judge is required to impose a sentence "so that a juvenile offender who is capable of reform is not sentenced to a term-of-years beyond his or her expected mortality." Id. at 149. Grant held that actuarial tables alone could not resolve that question. The available statistics regarding the average life

- 5 -

expectancy of various permutations of gender and race would result in different sentences based on those classifications, which would raise constitutional questions. Moreover, mortality tables

> shed no light on whether it is one's membership in a certain racial or ethnic population that, as a biological matter, determines life expectancy or whether instead it is the social, economic, medical, and cultural factors associated with a particular ethnic identity that primarily determine how long an individual can be expected to live.

Id. (quoting United States v. Mathurin, 868 F.3d 921, 932 (11th Cir. 2017)). Grant held that a sentencing court is required to conduct an individualized hearing where "in addition to actuarial tables, lower courts should consider any evidence made available by the parties that bears on the offender's mortality, such as medical examinations, medical records, family medical history, and pertinent expert testimony." Id. at 150.

We decline to follow Grant, which is not binding on this Court, and, in any event, was vacated and accepted for en banc consideration after the briefs in this case were submitted. More importantly, Appellant fails to develop how a remand is consistent with our jurisprudence, which a three-judge panel of this Court cannot overrule. First, Foust held that the identical sentence at issue herein was not a de facto LWOP sentence. "Similarly, there are clearly sentences which do not constitute de facto LWOP sentences. A sentence of 30 years to life falls into this category." Foust, supra at 438. While language in Foust suggests that its conclusion was limited "to the facts of this case," id., the Court indicated that a thirty-year sentence is categorically permissible

in this context.[2] However, that particular point was not actually in issue, as Foust focused on the consecutive nature of the sentences. Id. ("[Foust]'s counsel conceded that a sentence of 30 years to life imprisonment does not violate Miller. Instead, she stressed the consecutive nature of the two sentences in this case requires vacatur[.]").

To the extent that Foust left that door open, this Court, in Commonwealth v. Bebout, 186 A.3d 462, 467–69 (Pa.Super. 2018), closed it. Bebout, which interpreted Foust, expressed skepticism regarding the feasibility of individualized sentencing hearings like the sort requested by Appellant.

> The key factor in considering the upper limit of what constitutes a constitutional sentence, in this narrow context, appears to be whether there is "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Graham, 560 U.S. at 75, 130 S.Ct. 2011. Implicit in this standard is the notion it would not be meaningful to provide an opportunity for release based solely on the most tenuous possibility of a defendant's surviving the minimum sentence imposed. To be meaningful or, at least, potentially meaningful, it must at least be plausible that one could survive until the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits. Thus, though it expressly declined to do so, the Foust Court seemed to suggest some sort of meaningful-opportunity-for-release standard by declaring that a 150–years–to–life sentence constitutes a de facto LWOP sentence. If it had any other standard in mind for making that determination, the Foust Court's analysis omitted it.

---

[2] Indeed, if a sentence of thirty years at the minimum could be, as Appellant suggests, a de facto LWOP sentence, then 18 Pa.C.S. § 1102.1, which requires that sentence for offenses committed on or after June 24, 2012 as a mandatory minimum is presumably unconstitutional since it does not countenance any deviation whatsoever.

Instantly, Appellant was sentenced to 45–life, and he has already been incarcerated for this crime since he was 15 years old. Accordingly, Appellant will be eligible for parole when he is 60 years old. Appellant argues that this constitutes a de facto life sentence because some studies have suggested that a very narrow subset of the population—individuals sentenced to life imprisonment as juveniles in Michigan—have an average life expectancy of 50.6 years. Appellant's Brief at 24. However, Appellant also cites to the Supreme Court of Connecticut, which recently noted that "government statistics indicate that the average life expectancy for a male in the United States is seventy-six years." Id. at 25 (quoting Casiano v. Commr. of Correction, 317 Conn. 52, 115 A.3d 1031, 1046 (2015)). The Commonwealth argues, and Appellant does not appear to dispute, that this data was not made part of the record in this case. We agree.

Nevertheless, we would not find such data helpful to our analysis, except in the most general sense . . . . The problem with Appellant's arguments, however, even if he had submitted such data as evidence to the sentencing court, is that he is not offering a workable standard to this Court as to what constitutes a de facto life sentence. Appellant seems to suggest we should use data from a very narrow population of juvenile lifers in Michigan to craft a standard. Why not seek out data from an even narrower population, such as from white, male juvenile lifers from Western Pennsylvania who have already survived into their 50s, and who have comparable health statuses to Appellant? One could easily imagine that life expectancy data could fluctuate drastically in either direction as each new variable further narrows the studied population. As becomes abundantly clear, the problem with the sort of statistical analysis suggested by Appellant is that it is not at all discernable which statistics we can rely on to predict life expectancy in specific cases, and we are virtually certain to have a standard that is in constant flux with the addition of each new study.

An equally problematic concern is what we do with such statistics. It is not immediately apparent how the courts should translate average life expectancy data into a de facto LWOP sentence standard, and Appellant has not even suggested how we would do it. Certainty, or near certainty, that one will survive his or her minimum sentence is a useless standard. One cannot be certain

to survive any sentence, however short. Should, then, the constitutional maximum term of the imposed minimum sentence be half the average life expectancy to provide a meaningful opportunity for release? One quarter? One tenth? The use of statistical analysis of life expectancies to govern a de facto LWOP standard appears to create a myriad of new questions without any easy answers, sending us down a constantly evolving rabbit hole from which we may never escape as more and more data arrives. Consequently, even if Appellant had properly admitted into evidence the relevant life expectancy statistics that he now raises in his brief, it is not evident how helpful they would have been to the construction of a standard for what constitutes a de facto LWOP sentence, or how such data dictates a result in this case.

Id. at 467–69 (footnote omitted, emphases in original).

We find that Foust and Bebout foreclose any challenge to the legality of Appellant's thirty-year sentence on the grounds it amounts to a de facto LWOP sentence. Foust strongly suggested that this precise sentence is categorically not a LWOP life sentence. Moreover, Bebout held that a forty-year mandatory minimum, which would make Bebout eligible for release at sixty years old, was not a de facto LWOP sentence. Like Bebout, Appellant has not supplied any statistical information, either to the sentencing court or this Court, that could possibly supply an alternative answer. Moreover, Bebout opined that such evidence would not have mattered for the reasons set forth therein. Thus, our de novo review of the legality of this sentence compels our affirmance. See also Commonwealth v. White, 193 A.3d 977, 986 (Pa.Super. 2018) (holding minimum term of thirty-five years for offender who was seventeen when incarcerated and therefore eligible for parole at fifty-two was not de facto LWOP sentence).

We now address Appellant's challenge to the discretionary aspects of his sentence. Unlike the former challenge, we are now examining the aggregate sentence, which Appellant maintains constituted an abuse of the sentencing court's discretion.

> "[T]here is no absolute right to appeal when challenging the discretionary aspect of a sentence." Commonwealth v. Crump, 995 A.2d 1280, 1282 (Pa.Super.2010); 42 Pa.C.S. § 9781(b). Rather, an "[a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." Crump, supra at 1282. In determining whether a substantial question exists, this Court does not examine the merits of the sentencing claim. Commonwealth v. Tuladziecki, 513 Pa. 508, 522 A.2d 17 (1987).
>
> In addition, "issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." Commonwealth v. Kittrell, 19 A.3d 532, 538 (Pa.Super.2011). Furthermore, a defendant is required to preserve the issue in a court-ordered Pa.R.A.P.1925(b) concise statement and a Pa.R.A.P. 2119(f) statement. Commonwealth v. Naranjo, 53 A.3d 66, 72 (Pa.Super.2012).

Commonwealth v. Cartrette, 83 A.3d 1030, 1042 (Pa.Super. 2013).

Appellant has complied with the procedural requirements by preserving his issue in a post-sentence motion, filing a timely notice of appeal, and including a Pa.R.A.P. 2119(f) statement in his brief. We thus turn to whether Appellant has presented a substantial question.

Appellant alleges that the court "focused on the facts of the offense when imposing sentence . . . [its] statements illustrated the crushing weight [the

judge] placed on the nature of the offense itself." Appellant's brief at 28. Appellant points to a host of favorable factors that he believes warrants a lesser sentence. This argument is an assertion that the sentencing court failed to give adequate consideration to mitigating factors. Such allegations generally fail to present a substantial question. "This Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." Commonwealth v. Disalvo, 70 A.3d 900, 903 (Pa.Super. 2013) (citation omitted).

We find that Appellant has failed to present a substantial question. The existence of a substantial question is made on a case-by-case basis. Commonwealth v. Derry, 150 A.3d 987, 991 (Pa.Super. 2016). We grant the appeal "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." Id. at 991 (citing Commonwealth v. Sierra, 752 A.2d 910, 912–13 (Pa. Super. 2000)).

Appellant has failed to demonstrate either prong. Preliminarily, we note his primary argument is that the court failed to adequately apply 18 Pa.C.S. § 1102.1(d), which states:

> (d) Findings.--In determining whether to impose a sentence of life without parole under subsection (a), the court shall consider and make findings on the record regarding the following:
>
> > (1) The impact of the offense on each victim, including oral and written victim impact statements made or

submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. A victim impact statement may include comment on the sentence of the defendant.

(2) The impact of the offense on the community.

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) The nature and circumstances of the offense committed by the defendant.

(5) The degree of the defendant's culpability.

(6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7) Age-related characteristics of the defendant, including:

> (i) Age.
>
> (ii) Mental capacity.
>
> (iii) Maturity.
>
> (iv) The degree of criminal sophistication exhibited by the defendant.
>
> (v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.
>
> (vi) Probation or institutional reports.
>
> (vii) Other relevant factors.

18 Pa.C.S. § 1102.1(d). Additionally, Appellant references the language "whether the Commonwealth proved permanent incorrigibility, irreparable corruption or irretrievable depravity which Appellant would argue the Commonwealth failed to do." Appellant's brief at 42.

We first address Appellant's invocation of the "incorrigibility" language. As our Supreme Court summarized in Commonwealth v. Batts, 163 A.3d 410, 454–55 (Pa. 2017), that language pertains to the threshold decision of whether the juvenile offender is eligible for parole:

> The United States Supreme Court has clearly and unambiguously instructed that the decision that an offender is one of the rare and uncommon juveniles who may constitutionally receive a sentence of life without the possibility of parole must be made with near certainty. The sentencer must determine that the offender is and "forever will be a danger to society," a finding that the High Court found to be in direct conflict with a child's inherent capacity to change. Miller, 567 U.S. at 472, 132 S.Ct. 2455. To protect youthful offenders from erroneous decisions that foreclose their ability to ever be released from prison, the Supreme Court therefore held that a sentence of life without parole is disproportionate and illegal for a juvenile offender unless that defendant "exhibits such irretrievable depravity that rehabilitation is impossible." Montgomery, 136 S.Ct. at 733 (citing Miller, 567 U.S. at 479–80, 132 S.Ct. 2455) (emphasis added).

Id. at 454–55 (emphasis in original); see also id. at 450 ("[I]t is the exceedingly rare and uncommon juvenile whose crime reflects his permanent incorrigibility who therefore may be constitutionally sentenced to life without the possibility of parole.") (citations omitted)." In Commonwealth v. Machicote, 172 A.3d 595, 602 (Pa.Super. 2017), we held that "application of

the Miller factors is immaterial"[3] when a sentencing court declines to impose LWOP. Id. at n.3. Thus, Appellant's complaint that the Commonwealth failed to prove "permanent incorrigibility, irreparable corruption or irretrievable depravity," is misguided. The Commonwealth was required to do so only if a LWOP sentence was imposed.[4]

Next, Appellant's reliance on any portion of § 1102.1 is misplaced. First, the statute applies only to convictions occurring after June 24, 2012. More importantly, Appellant ignores the fact that if this statute actually applied, his sentence would be illegal. The statute calls for the following mandatory minimum penalty:

> (a) First degree murder.--A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:

_____

[3] As explained in Commonwealth v. Batts, 163 A.3d 410, 455 (Pa. 2017), "some of the Miller factors are noticeably absent from section 1102.1(d)." Id. at 455 n.23. However, all of the Miller factors must be considered prior to sentencing a juvenile to LWOP. Id.

[4] Our Supreme Court has granted discretionary review of the following question:

> Whether, in order to comply with Miller and its progeny, a court sentencing a juvenile defendant for a crime for which life without parole is an available sentence must review and consider on the record the Miller factors adopted by this Court in Batts I, regardless whether the defendant is ultimately sentenced to life without parole.

Commonwealth v. Machicote, 186 A.3d 370 (Pa. 2018).

> (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

18 Pa.C.S. § 1102.1(a)(1).

Appellant, even with the consecutive sentence for conspiracy to commit murder, received an aggregate sentence that is below the mandatory minimum for the homicide count by itself. Therefore, we cannot accept that his sentence is contrary to the fundamental norms of sentencing. The court explicitly noted its reliance on this statute as providing general guidelines, and acknowledged its discretion to impose a lesser sentence. N.T. Resentencing, 10/16/17, at 152. That is consistent with Justice Baer's suggestion in Commonwealth v. Batts, 66 A.3d 286 (Pa. 2013):

> I believe that trial courts conducting resentencing of defendants like [Batts], whose conviction pre-dated Miller, but who preserved a Miller claim on appeal, would be wise to follow the policy determinations made by the legislature in its recent enactment. Here, the minimum sentence applicable to [Batts], if given a sentence of life with parole, would be 25 years. . . .
>
> . . . I believe courts engaging in resentencing necessitated by the Miller decision, should look to the newly enacted statute for guidance without abrogating their discretion as appropriate in individualized cases.

Id. at 300 (Baer, J., concurring).

Had Appellant been convicted after June 24, 2012, the General Assembly has determined that, at first degree homicide alone, Appellant must serve a sentence longer than the aggregate sentence herein. We do not find

that Appellant's complaint that the court failed to adequately weigh his mitigating circumstances, i.e., impose an even lower sentence, has presented a substantial question.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2018