J-A30016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KRISTOPHER HEGGINS | : | |
| | : | |
| Appellant | : | No. 1820 WDA 2016 |

Appeal from the Judgment of Sentence August 10, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007504-2000

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KRISTOPHER HEGGINS | : | |
| | : | |
| Appellant | : | No. 1821 WDA 2016 |

Appeal from the Judgment of Sentence August 10, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007508-2000

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KRISTOPHER HEGGINS | : | |
| | : | |
| Appellant | : | No. 1836 WDA 2016 |

Appeal from the Judgment of Sentence August 10, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007508-2000

BEFORE:  BOWES, J., STABILE, J., and FORD ELLIOTT, P.J.E.

CONCURRING MEMORANDUM BY BOWES:  FILED: January 3, 2019

Resentencing juvenile homicide offenders like Appellant, who are entitled to retroactive application of ***Miller v. Alabama***, 567 U.S. 460 (2012), presents unique considerations given the lack of legislative response from the General Assembly.  Herein, the trial court incorrectly stated that Appellant directly murdered the victim, and that mistake obviously could have contributed to the sentence.  However, I note that Appellant's sentence is equal to the mandatory minimum that would apply if Appellant committed the instant crime today.  18 Pa.C.S. § 1102.1(c) (any person convicted of second-degree murder after June 24, 2012 and who was between fifteen and eighteen on the date of the offense shall be sentenced to a minimum of thirty years to life).  Thus, any erroneous statement was effectively harmless if the trial court was obligated to impose at least that sentence.  In ***Commonwealth v. Hicks***, 151 A.3d 216 (Pa.Super. 2016), we held under similar facts that a trial judge has discretion in these circumstances to depart from the otherwise-applicable minimum.  I agree that Appellant is entitled to resentencing; however, I am skeptical of the trial court's ability to impose anything less than the instant sentence upon remand.  Nonetheless, since the precedents in this area contemplate that possibility, I offer the following observations.

The problem in this case, as in ***Hicks***, traces back to the General Assembly's response to ***Miller***, wherein the United States Supreme Court held unconstitutional mandatory sentences of life imprisonment without the

- 2 -

possibility of parole ("LWOP") for offenders who were under eighteen at the time of their crimes. *Miller*, which was decided June 25, 2012, had obvious implications regarding the constitutionality of § 1102, which pre-*Miller* required a mandatory sentence of life imprisonment regardless of the offender's age. In turn, 61 Pa.C.S. § 6137(a) states that inmates "condemned to death or serving life imprisonment" are ineligible for parole. Thus, in tandem, § 1102 mandates a sentence of life imprisonment without the possibility of parole, which is unconstitutional as applied to juvenile offenders.

The General Assembly responded to *Miller* by enacting § 1102.1, effective October 25, 2012. That statute removed LWOP as a mandatory and established mandatory minimum penalties, which vary depending on the degree of homicide and age of the offender. However, the statute facially applies only to persons who were convicted after June 24, 2012. Thus, § 1102.1 did not apply to *Hicks*, nor does it apply to Appellant herein.

The chronological limitation within § 1102.1 has a simple explanation. As our Supreme Court stated in *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) ("*Batts II*"), "the General Assembly presumably initially believed (as did a majority of this Court) that the holding in *Miller* would not apply to defendants convicted prior to the date of the decision[.]" *Id*. at 444. That belief was upended by *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), which held that states are required to grant retroactive effect to new substantive rules of federal constitutional law, such as *Miller*.

- 3 -

The General Assembly has not responded to **Montgomery**. Therefore, when a trial court convenes a sentencing hearing to retroactively apply **Miller**, as occurred herein, the trial court lacks statutory guidance: § 1102 cannot constitutionally be applied since it calls for a mandatory maximum of life imprisonment without the possibility of parole, and § 1102.1 does not apply due to the offense date limitation.

Our Supreme Court addressed that issue in **Commonwealth v. Batts**, 66 A.3d 286 (Pa. 2013) ("**Batts I**"), which was revisited in **Batts II**. The primary consideration in the **Batts** cases was the maximum penalty permitted, *i.e.*, whether life imprisonment without the possibility of parole remained an option. Batts argued that the sentencing scheme was unconstitutional in its entirety, and asserted that his sentence "should be based on the most severe lesser included offense, namely, third-degree murder, with a maximum term of forty years' imprisonment." **Id**. at 294. Our High Court ultimately concluded that the parole provisions of § 6137 were severable.

The severability analysis led to two decisions from this Court holding that § 1102 remains operative with respect to the mandatory maximum penalty. **See Commonwealth v. Seskey**, 170 A.3d 1105 (Pa.Super. 2017) (maximum term of life imprisonment required for juvenile convicted of first-degree homicide); **Commonwealth v. Olds**, --- A.3d ---, 2018 WL 3233726 (Pa.Super. 2018) (maximum term of life imprisonment required for juvenile

convicted of second-degree homicide).[1]  However, the issue of what **minimum** must be imposed, if any, is a separate question.  Obviously, § 1102 does not call for any minimum period of incarceration since the statute contemplates a flat sentence of life imprisonment without parole.  In ***Batts I***, Justice Baer authored a concurring opinion urging trial courts to consider § 1102.1 when imposing a minimum.

> While the legislature specified that [§ 1102.1] applied to juvenile offenders convicted on or after the date of the ***Miller*** decision, which would not include [Batts], I believe that trial courts conducting resentencing of defendants like [Batts], whose conviction pre-dated ***Miller,*** but who preserved a ***Miller*** claim on appeal, would be wise to follow the policy determinations made by the legislature in its recent enactment.  Here, the minimum sentence applicable to [Batts], if given a sentence of life with parole, would be 25 years.
>
> If trial courts fail to take guidance from the recent legislative enactments, the minimum sentence imposed on any given juvenile before becoming eligible for parole could vary widely.  One court could immediately parole an 18 year old offender, while another court could impose a 50 year minimum sentence on a 14 year old offender.  While discretionary sentencing is a valid trial court function and ***Miller*** specifies that individual circumstances should be considered by judges sentencing juvenile murder offenders, given that the legislature is the policy-making body for our Commonwealth and has quickly responded to ***Miller*** indicating the minimum sentences it views as appropriate for different aged juvenile homicide offenders, I believe courts engaging in resentencing necessitated by the ***Miller*** decision, should look to the newly enacted statute for guidance without abrogating their discretion as appropriate in individualized cases.

---

[1] ***Olds*** also rejected Appellant's current claim that imposing a mandatory sentence of life imprisonment with the possibility of parole is unconstitutional for a juvenile who did not intend to kill.

*Batts I*, *supra* at 300 (emphasis added, footnote omitted).[2]

In *Hicks*, we determined that the inapplicability of § 1102.1 to an offender who committed his crime before June 24, 2012, permitted a trial judge to impose a sentence lower than the applicable minimums set forth by that statute when retroactively applying *Miller*. In *Hicks*, the trial court resentenced the offender to the same minimum penalty that would have applied under § 1102.1. Apparently, the trial court believed it had no discretion to depart from § 1102.1 despite its facial inapplicability. We stated, "we are constrained to conclude that the trial court abused its discretion in relying solely on section 1102.1 without considering the sentencing factors set forth in *Commonwealth v. Knox*, 50 A.3d 732, 745 (Pa.Super. 2012)[.]" *Id*. at 226.

I find that *Hicks* applies. This case differs from *Hicks* in that it is unclear whether the trial court herein believed that it was obligated to follow § 1102.1 in imposing a sentence. However, the fact that the trial court incorrectly stated that Appellant shot the victim is clearly the type of error that could have affected the minimum selected. Therefore, remand is required as *Hicks* clearly precludes any harmless error-type analysis, *i.e.*, the fact that

---

[2] Upon remand, the sentencing court again imposed life imprisonment without the possibility of parole. Our Supreme Court granted review, and, noting the lack of legislative action, exercised its authority to adopt a presumption against LWOP sentences for juveniles.

the trial judge imposed the exact same sentence that would apply under §
1102.1 is of no moment.

Nevertheless, I am troubled by the notion that a trial court has discretion
to impose a minimum lower than that called for by § 1102.1. As quoted,
**Hicks** directed the trial court to consider the factors discussed in **Knox** in
imposing a minimum sentence. **Knox**, like **Batts**, dealt with the review of an
LWOP sentence. Thus, its discussion of the factors a court needed to consider
spoke to whether a sentence of LWOP was permissible as a maximum, not, as
herein, the appropriate minimum.

> [A]lthough **Miller** did not delineate specifically what factors a
> sentencing court must consider, at a minimum it should consider
> a juvenile's age at the time of the offense, his diminished
> culpability and capacity for change, the circumstances of the
> crime, the extent of his participation in the crime, his family, home
> and neighborhood environment, his emotional maturity and
> development, the extent that familial and/or peer pressure may
> have affected him, his past exposure to violence, his drug and
> alcohol history, his ability to deal with the police, his capacity to
> assist his attorney, his mental health history, and his potential for
> rehabilitation.

**Knox**, **supra** at 745.

To the extent that **Knox** and **Hicks** interpret **Miller** to require
consideration of these factors with respect to establishing a minimum
sentence, as opposed to the applicability of a maximum sentence of LWOP, I
believe that conclusion is incorrect. **Miller** holds only that a juvenile offender
cannot be sentenced to life without parole as a mandatory penalty. **Miller**
does not govern the broader question of whether other mandatory minimum

sentences may be constitutionally applied to juveniles in general. In fact, the High Court clarified that a *Miller* violation can be cured by making the offender eligible for parole. *Montgomery*, *supra* at 736 ("A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *See*, *e.g.,* Wyo. Stat. Ann. § 6–10–301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years)).[3]

In this Commonwealth, *Miller* requires a court to first determine whether a LWOP sentence is warranted pursuant to the procedure set forth by *Batts II*; if not, the court must impose a maximum of life imprisonment and an applicable minimum sentence. As noted, had Appellant committed the instant crime on or after June 24, 2012, the trial court would be required to impose a sentence of thirty years to life. 18 Pa.C.S. § 1102.1(c). That fact leads me to question not only the wisdom but the viability of imposing any lesser sentence on remand. Appellant and other similarly-situated juveniles, *i.e.* persons who are entitled to retroactive application of *Miller*, understandably seek lower minimum sentences than those that would apply under § 1102.1. To this end, Appellant avers that "it was still [c]onstitutionally

---

[3] To be sure, a State cannot avoid *Miller* by imposing a *de facto* life sentence *via* an extraordinarily long minimum sentence. However, the fact the High Court approvingly cited a statute that made all juvenile offenders eligible for parole after twenty-five years illustrates that *Miller* has nothing to do with the constitutionality of a lengthy minimum sentence.

required that the sentencing court conduct an individualized analysis of the proper sentence pursuant to *Miller* and *Knox*." Appellant's brief at 25-26. If Appellant is correct that *Miller* **requires** that individual analysis, then I fail to see how § 1102.1 is constitutional. A trial judge would not be authorized to impose a lesser sentence no matter how compelling the individual factors may be for a crime committed on or after June 24, 2012.

Nevertheless, *Hicks* controls and we must remand for resentencing. That said, authorizing a trial court to impose a lower sentence than the minimum called for by § 1102.1 clearly raises the possibility of unequal application of *Miller*. As *Batts II* noted, the enactment of § 1102.1 represented a belief that *Miller* would **not** apply retroactively. If that view was correct—and there is little reason to suspect otherwise—then the General Assembly obviously did not intend for individuals such as Appellant to receive **greater** benefits than a juvenile offender who commits homicide today. The point of *Miller* retroactivity is to ensure that juvenile offenders are not serving unconstitutional sentences. Thus, incarcerated pre-*Miller* individuals should be treated exactly the same as a juvenile offender sentenced after *Miller*. In this respect, *Miller* discusses the proportionality of a sentence as applied to juveniles as a class. The High Court's analysis included an accounting of the "evolving standards of decency." *Miller*, *supra* at 494-95 ("Our Eighth Amendment cases have also said that we should take guidance from evolving standards of decency that mark the progress of a maturing society. . . .

[which] may abandon harsh punishments that it comes to view as unnecessary or unjust.") (cleaned up). Accordingly, it makes little sense to hold that the "evolving standards of decency" that govern a sentence proceeding **today** can somehow result in lengthier prison time than for persons such as Appellant who were sentenced under the law in effect at the time of their original crimes.

I acknowledge that **Batts II** stated that a trial court is required to exercise its discretion to find an appropriately individualized sentence, owing to the lack of statutory authorization. Simultaneously, the Court referenced the possibility of disparate application.

> Although [§ 1102.1] itself is inapplicable to Batts based (solely) upon the date of his conviction, it is clear, as reflected in section 1102.1, that the General Assembly would preserve the remainder of the parole statute, sever the minimum sentence ceiling of section 9756(b)(1), and permit these defendants to be sentenced to life with the possibility of parole, rather than have no sentence at all for juveniles convicted of first-degree murder. **To conclude otherwise would require that we impermissibly presume that the General Assembly intended to discriminate unconstitutionally between pre- and post–*Miller* juvenile offenders** or that it intended that only post–*Miller* juvenile offenders receive punishment for first-degree murder—clearly an absurd and unreasonable proposition. *See* 1 Pa.C.S. § 1922(1), (3) (instructing that when ascertaining legislative intent, courts must presume that the General Assembly did not intend to violate the State or Federal Constitution or intend an absurd, impossible or unreasonable result).

*Id*. at 444–45 (some citations omitted, emphasis added). While this language was responding to Batts's argument that the only authorized sentence was for third-degree murder, for the foregoing reasons I find it difficult to conclude

that Appellant is entitled to a more favorable sentence under a retroactive application of *Miller*.

Finally, I note that on May 22, 2018, our Supreme Court granted a petition for allowance of appeal on the following question:

> Whether, in order to comply with *Miller* and its progeny, a court sentencing a juvenile defendant for a crime for which life without parole is an available sentence must review and consider on the record the *Miller* factors adopted by this Court in *Batts I*, regardless whether the defendant is ultimately sentenced to life without parole.

*Commonwealth v. Machicote*, 186 A.3d 370 (Pa. 2018).[4]

Our Supreme Court may conclude that the answer is yes. Until such time, for the reasons discussed *supra*, I am skeptical of a framework that affords greater relief to one class of juveniles. With those reservations, I concur.

---

[4] We concluded that *Miller* factors must only be considered in cases where the Commonwealth seeks to overcome the presumption against LWOP. "However, because the PCRA court determined that a LWOP sentence was inappropriate . . . this issue is moot as application of the *Miller* factors is immaterial." *Commonwealth v. Machicote*, 172 A.3d 595, 602 (Pa.Super. 2017).